[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUG 4, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-12598

_____

D. C. Docket No. 03-03278-CV-HS-S

KH OUTDOOR, LLC,

Plaintiff-Appellee,

versus

TRUSSVILLE, CITY OF,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(August 4, 2006)**

Before DUBINA, MARCUS and PRYOR, Circuit Judges.

MARCUS, Circuit Judge:

The City of Trussville, Alabama, ("the city") appeals the district court's

entry of a permanent injunction barring the city from enforcing section 1.0 of the

City of Trussville Sign Ordinance ("the ordinance") on First Amendment grounds. After thorough review, we affirm.

## I.

The undisputed facts of this case are these. Plaintiff KH Outdoor, LLC, ("KH Outdoor") is in the business of erecting and operating signs used for the dissemination of both commercial and noncommercial speech. KH Outdoor has a history of posting ideological, religious, charitable, and political messages on the signs that it operates and allegedly provides a higher percentage of its advertising space to noncommercial clients at reduced rates than does any other advertising company. Trussville is a fast-growing city in Jefferson County, Alabama.

KH Outdoor submitted eleven applications to the city for permits to construct outdoor advertising signs at various locations in Trussville. The applications did not indicate whether the signs would display commercial or noncommercial messages. The city denied each of the applications pursuant to Section 20.0 of the ordinance, which regulates "billboard signs."[1] Section 20.0

---

[1] The sign ordinance creates a comprehensive scheme for regulating the content, permitting, placement, number, design, operation, and maintenance of signs within the city. Section 1.0 describes the purpose and intent of the ordinance; section 2.0 provides definitions; section 3.0 lists general regulations and prohibited signs; section 4.0 lists signs exempt from the ordinance; sections 5.0 to 19.0 describe the signs permitted in various agricultural, commercial, industrial, institutional, park, and residential districts; section 20.0 provides regulations for billboard signs; section 21.0 governs off-premise signs; section 22.0 provides regulations for portable or temporary signs; section 23.0 sets forth the permitting, fee, and inspection regulations; section 24.0 governs abandoned signs; section 25.0 regulates dangerous or defective

states that billboard signs are permitted <u>only</u> on interstate highways and provides

numerous size, lighting, and setback requirements.[2]  Section 2.0 of the same

---

signs; section 26.0 governs non-conforming signs; section 27.0 provides for notification for sign repair or removal; and section 28.0 provides penalties for violating the ordinance.

[2]Section 20.0 states in full:

Billboard signs are permitted on interstate highways only and shall be subject to the following requirements:

A.  No billboard sign shall be erected closer than five hundred (500) feet from a residential zone district as measured from the nearest edge of the sign.

B.  Any illumination of a billboard sign shall be of an indirect type and shall not face toward any residential area nor direct lighting in any direction other than toward the sign face itself.

C.  No portion of any billboard sign shall project over or encroach upon any public property or public right-of-way.

D.  No billboard sign structure shall be erected or maintained closer to another sign structure other than as follows:

(1)  Within one thousand five hundred (1,500) feet in any direction between other billboard structures.

E.  No billboard sign structure shall exceed the following specified size and height requirements for specific types of thoroughfares and observe specified setbacks.

(1)  <u>Sign area/Height.</u>  The maximum sign area shall not be more than eight hundred (800) square feet, including embellishments, and not exceed forty (40) feet in height or forty (40) feet above the road grade.

(2)  <u>Sign Faces.</u>  A billboard sign may contain two signs oriented in the same direction; be placed back-to-back, or V-type with an angle not to exceed thirty-five (35) degrees, provided that the total area of the sign faces oriented in any one direction shall not exceed maximum size provisions.

(3)  <u>Setbacks.</u>

| Sign face in One Direction | Minimum Setback From Right-of-way |
| --- | --- |
| 350 sq. ft. or greater | 75 ft. |

3

ordinance, which provides definitions for terms used in the other sections, defines a "billboard sign" as "[a]n off-premise sign which directs attention to a business, commodity, service or entertainment, sold or offered for sale at a location other than the premises on which said sign is located."  The ordinance prohibits any sign that it does not explicitly allow; section 1.0 provides that "[i]f not otherwise stated, any sign not specifically permitted in a zoning district as provided under the applicable section, shall be prohibited in that district."[3]  The city denied the applications because KH Outdoor sought to place some billboard signs on roads other than interstate highways and because some of the signs failed to meet the size requirements of section 20.0.

_____

|  |  |
|---|---|
| 200-349 sq. ft. | 50 ft. |
| 75-199 sq. ft. | 30 ft. |
| Less than 75 sq. ft. | 15 ft. |

F.      For every billboard sign installed within the Trussville city limits, one billboard sign shall be removed within the Trussville city limits.

[3]Section 1.0 states in full:

The purpose of these sign regulations is to provide minimum control of signs in Trussville to promote the health, safety, and general welfare by lessening hazards to pedestrians and vehicular traffic, by preserving property values, by preventing unsightly and detrimental development which has a blighting influence upon residential, business and industrial uses, and by preventing signs from reaching such excessive size or numbers that they obscure one another to the detriment of all concerned.

**If not otherwise stated, any sign not specifically permitted in a zoning district as provided under the applicable section, shall be prohibited in that district.**

4

After the city denied the permit applications, KH Outdoor brought suit in the United States District Court for the Northern District of Alabama seeking a preliminary injunction and a permanent injunction to prevent the city from enforcing the ordinance. The complaint leveled various constitutional challenges against nearly every provision of the ordinance. The parties filed cross-motions for summary judgment, both of which the district court granted in part and denied in part. The district court found that the ordinance unconstitutionally favors commercial speech over noncommercial speech for two reasons. First, the district court determined that billboards are the largest signs permitted by the ordinance and that by definition billboards cannot contain noncommercial messages. Thus, noncommercial messages cannot be as large as commercial messages in those areas where billboards are permitted. Second, the district court found that the only provision of the ordinance that allows for political messages at all mandates that those signs be temporary in nature. Because permanent signs are permitted for commercial speech, the trial judge found that the ordinance unconstitutionally favors commercial speech over at least one type of noncommercial speech -- political messages.

After determining that the ordinance unconstitutionally discriminates based on the content of speech, the district court permanently enjoined the city from

5

enforcing section 1.0 of the ordinance, which prohibits any sign "not specifically permitted in a zoning district as provided under the applicable section." Essentially, with the district court having prevented the city from enforcing section 1.0 against KH Outdoor, the ordinance no longer contains restrictions that would prohibit erection of a noncommercial billboard.[4] The city appeals the district court's entry of a permanent injunction against the use of section 1.0, arguing that KH Outdoor does not have standing, and, that even if it does, the ordinance is a constitutional, content-neutral regulation. We review both arguments in turn.

## II.

We have jurisdiction to review an interlocutory order granting an injunction pursuant to 28 U.S.C. § 1292(a)(1). See also Alamo Rent-A-Car, Inc. v. Sarasota-Manatee Airport Auth., 825 F.2d 367, 369 n.2 (11th Cir. 1987). We review the district court's order granting an injunction for abuse of discretion. Mut. Serv. Ins. Co. v. Frit Indus., Inc., 358 F.3d 1312, 1324 (11th Cir. 2004). However, "[w]e review the district court's findings of fact for clear error, and its application of the law de novo, premised on the understanding that [a]pplication of an improper legal

---

[4]The district court also denied parts of KH Outdoor's motion for summary judgment, granted parts of the city's motion for summary judgment, and denied parts of the city's motion for summary judgment. Specifically, the district court found that the provisions of the ordinance were severable and granted the city's motion for summary judgment as to each provision unrelated to KH Outdoor's injury. Moreover, the district court found that the ordinance did not constitute an invalid prior restraint on speech and did not impermissibly favor some forms of commercial speech over others. None of those rulings were appealed.

standard . . . is never within a district court's discretion." Solantic, LLC v. City of

Neptune Beach, 410 F.3d 1250, 1254 (11th Cir. 2005) (internal quotation marks

omitted) (second and third alterations in original); see also Major League Baseball

v. Crist, 331 F.3d 1177, 1183 (11th Cir. 2003) (noting that while our review of an

order granting an injunction is for clear abuse of discretion, "[u]nderlying

questions of law" are reviewed de novo).

It is by now axiomatic that a plaintiff must have standing to invoke the

jurisdiction of the federal courts. See, e.g., Lujan v. Defenders of Wildlife, 504

U.S. 555, 560, 112 S. Ct. 2130, 2136 (1992). "[T]he irreducible constitutional

minimum of standing contains three elements," id., all of which must be satisfied:

> First, the plaintiff must have suffered an injury in fact -- an invasion
> of a legally protected interest which is (a) concrete and particularized,
> and (b) actual or imminent, not conjectural or hypothetical. Second,
> there must be a causal connection between the injury and the conduct
> complained of -- the injury has to be fairly . . . trace[able] to the
> challenged action of the defendant, and not . . . th[e] result [of] the
> independent action of some third party not before the court. Third, it
> must be likely, as opposed to merely speculative, that the injury will
> be redressed by a favorable decision.

Bochese v. Town of Ponce Inlet, 405 F.3d 964, 980 (11th Cir.) (internal quotation

marks omitted) (alterations in original), cert. denied, 126 S. Ct. 377 (2005). In

addition to the constitutional requirements, there are also prudential standing

principles, one of which requires that "a party generally may assert only his or her

7

own rights and cannot raise the claims of third parties not before the court." Granite State Outdoor Adver., Inc. v. City of Clearwater, 351 F.3d 1112, 1116 (11th Cir. 2003), cert. denied, 125 S. Ct. 48 (2004).

First Amendment standing analysis may be complicated further by the overbreadth doctrine, which serves as an exception to the prudential principle noted above. Under overbreadth, "a party may bring a First Amendment case asserting the rights of third parties if a statute is constitutionally applied to the litigant but might be unconstitutionally applied to third parties not before the court." CAMP Legal Def. Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1270-71 (11th Cir. 2006) (internal quotation marks omitted). Significantly, the overbreadth doctrine does not relieve a plaintiff from having to establish constitutional standing; it is simply an exception to one of the prudential requirements. See id. at 1270 (noting that "[t]he overbreadth doctrine does not relieve a plaintiff of the burden to prove constitutional standing"). Indeed, a plaintiff may bring an overbreadth challenge to only those provisions of a law or ordinance that "affect its activities." Id. at 1273. In other words, the overbreadth doctrine does not change the statutes or provisions of an ordinance a plaintiff may challenge; she can only contest those which actually caused her injury. Rather, the overbreadth doctrine simply allows a plaintiff to bring a facial challenge to a provision of law that

8

caused her injury, regardless of whether the provision's regulation of her conduct in particular was constitutional.

The city first argues that KH Outdoor does not have standing to seek an injunction against enforcement of section 1.0 of the ordinance. The city's argument is a simple one. The permits were denied because they failed to comply with the size and location requirements set forth in section 20.0. Therefore, the city argues, KH Outdoor has standing to challenge only section 20.0, and not section 1.0. The city's argument fails because it attempts to read section 20.0 in isolation, divorced from those parts of the ordinance that provide the basic definitional structure for the terms used in section 20.0 and which more generally define the scope of signs allowed by section 20.0.

The parties do not dispute that KH Outdoor has constitutional standing to challenge section 20.0 -- indeed, counsel for the city conceded as much at oral argument. KH Outdoor suffered a concrete and actual injury when its permits were denied; plainly, the injury was caused by the city's application of section 20.0 of the ordinance; and the injury undeniably can be redressed by the courts. Thus, KH Outdoor has standing to challenge the provisions found in section 20.0. Moreover, it seems abundantly clear that section 20.0 cannot be read or even understood without also considering section 1.0, which explicitly provides the purpose and

9

intent of the ordinance as a whole (and which expressly concludes that any sign not specifically permitted is prohibited), and section 2.0, which defines the very terms used in section 20.0. It would be incongruous indeed to suggest that a plaintiff could challenge a particular provision of a statute, but somehow refuse to consider the expressed purpose of the statute or the definitions of the very terms used in the provision in question. The purpose and definition provisions of the ordinance affect KH Outdoor's activities in the same way that section 20.0 affects its activities; the three combine to form the basis for the city's permit denial. See CAMP Legal Def. Fund, 451 F.3d at 1273 (noting that a plaintiff may challenge only those provisions of an ordinance that "affect its activities").

Once it is established that KH Outdoor has standing to challenge section 20.0, the overbreadth doctrine allows that challenge to that specific provision based on its impact on third parties. So, although the permits in this case were actually denied because KH Outdoor wanted to put billboards on roads that were not interstate highways, in violation of section 20.0, and also sought to construct them within 1500 feet of other billboards, in violation of section 20.0(D)(1), KH Outdoor is not limited to an as-applied challenge to section 20.0 based on only those facts. See id. at 1271 (holding that "the overbreadth doctrine allows a plaintiff, who has suffered injury under one provision, to challenge that provision

10

on facts other than those that apply to the plaintiff"). Thus, under the overbreadth doctrine, KH Outdoor is free to challenge facially section 20.0. Even though the permit applications in this case did not specify whether the signs would be used for commercial or noncommercial purposes, KH Outdoor remains free to allege (as it did) that by restricting the largest permissible signs to billboards, which by definition may contain only commercial speech, the city unconstitutionally discriminates against noncommercial speech. See id. ("A plaintiff who has established constitutional injury under a provision of a statute as applied to his set of facts may also bring a facial challenge, under the overbreadth doctrine, to vindicate the rights of others not before the court under that provision."); Granite State Outdoor Adver., Inc., 351 F.3d at 1117 (allowing a challenge to a section of an ordinance under which billboard permits were denied "as applied to [the plaintiff] and, under the overbreadth doctrine, as applied to non-commercial speech"); Dimmitt v. City of Clearwater, 985 F.2d 1565, 1571 (11th Cir. 1993) ("Where the statute governs both commercial and noncommercial speech, however, a litigant with a commercial speech interest may nonetheless qualify by virtue of the overbreadth rule to assert the speech rights of third parties with noncommercial speech interests."). In short, KH Outdoor has standing to raise the very challenge that led to the district court's permanent injunction.

11

## III.

Next, the city argues that even if KH Outdoor has standing, the ordinance does not unconstitutionally discriminate against noncommercial speech and that the district court erred in striking down section 1.0.[5] The governing standard is by now clear enough:

> A district court may grant injunctive relief only if the moving party shows that: (1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest.

Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc) (per curiam). For a permanent injunction, the standard is essentially the same, except that the movant must establish actual success on the merits, as opposed to a likelihood of success. Amoco Prod. Co. v. Vill. of Gambell, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 1404 n.12 (1987).

As for the first consideration, the district court determined that KH Outdoor

---

[5]The city also argues that the district court erred by granting injunctive relief sua sponte. Contrary to the city's contention, KH Outdoor made clear from the beginning of the litigation that it was seeking injunctive relief when it filed its complaint titled "Complaint and Request For Injunctive Relief." The very first sentence of the complaint requests a preliminary and permanent injunction. Additionally, the prayer for relief in the complaint asks the district court to preliminarily and permanently "enjoin enforcement of the City's sign restrictions." Thus, the city was fairly placed on notice concerning the injunctive nature of the plaintiff's request, and nothing was done sua sponte. We add that the trial court has considerable discretion in determining whether "to flex the injunctive strong-arm of equity." Eli Lilly & Co., Inc. v. Generix Drug Sales, Inc., 460 F.2d 1096, 1099 (5th Cir. 1972).

12

succeeded on the merits because the ordinance impermissibly favors commercial speech to the detriment of noncommercial speech. We agree.

"In evaluating the constitutionality of an ordinance restraining or regulating speech, we first inquire whether the Ordinance is content-neutral." Solantic, 410 F.3d at 1258 (internal quotation marks omitted). "If the ordinance is a content-neutral time, place, and manner restriction, it is subject to intermediate scrutiny -- that is, it must not restrict speech substantially more than necessary to further a legitimate government interest, and it must leave open adequate alternative channels of communication." Id. "However, if the ordinance is content based, it is subject to strict scrutiny, meaning that it is constitutional only if it constitutes the least restrictive means of advancing a compelling government interest." Id. "As a general rule, laws that by their terms distinguish favored speech from disfavored speech on the basis of the ideas or views expressed are content based." Turner Broad. Sys., Inc. v. FCC, 512 U.S. 622, 643, 114 S. Ct. 2445, 2459 (1994). "On the other hand, a content-neutral ordinance is one that places no restrictions on . . . either a particular viewpoint or any subject matter that may be discussed." Solantic, 410 F.3d at 1259 (internal quotation marks omitted) (alteration in original).

The Supreme Court has afforded commercial and noncommercial speech

13

different treatment under the First Amendment.  See Metromedia, Inc. v. City of

San Diego, 453 U.S. 490, 506, 101 S. Ct. 2882, 2892 (1981) (plurality opinion)

(noting that in a prior case the Supreme Court had continued "to observe the

distinction between commercial and noncommercial speech, indicating that the

former could be forbidden and regulated in situations where the latter could not

be").  In Metromedia, a plurality of the Supreme Court found a City of San Diego

sign ordinance unconstitutional because it allowed on-site commercial advertising

while banning on-site noncommercial advertising, which thereby impermissibly

favored commercial over noncommercial speech.  Id. at 512-13, 101 S. Ct. at 2895.

Although Metromedia did not result in a majority opinion, we have followed the

plurality's reasoning in our own decisions.  See, e.g., Coral Springs St. Sys., Inc. v.

City of Sunrise, 371 F.3d 1320, 1343-44 (11th Cir. 2004) (noting that Metromedia

does not permit a city to impermissibly favor commercial over noncommercial

speech and upholding an ordinance that made no such distinction); Café Erotica of

Fla., Inc. v. St. Johns County, 360 F.3d 1274, 1290 (11th Cir. 2004) (applying the

framework set forth by the Metromedia plurality); Messer v. City of Douglasville,

975 F.2d 1505, 1508-09 (11th Cir. 1992) (same).

     The Metromedia plurality explained its reasoning in these terms:

     [O]ur recent commercial speech cases have consistently accorded
     noncommercial speech a greater degree of protection than commercial

14

speech. San Diego effectively inverts this judgment, by affording a greater degree of protection to commercial than to noncommercial speech. . . . The use of onsite billboards to carry commercial messages related to the commercial use of the premises is freely permitted, but the use of otherwise identical billboards to carry noncommercial messages is generally prohibited. . . . Insofar as the city tolerates billboards at all, it cannot choose to limit their content to commercial messages; the city may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages.

Metromedia, 453 U.S. at 513, 101 S. Ct. at 2895 (emphasis added); see also City of Cincinnati v. Discovery Network, Inc., 507 U.S. 410, 426, 113 S. Ct. 1505, 1515 (1993) (striking down an ordinance that treated newsracks with commercial publications differently from those with noncommercial publications); Café Erotica, 360 F.3d at 1290-91. Thus, to the extent a city permits billboards, it may not restrict those billboards only to those with commercial messages.

The ordinance in this case represents a content-based restriction on noncommercial speech similar to the one we found unconstitutional in Café Erotica. In Café Erotica, the ordinance in question limited the size of noncommercial signs to 32 square feet. 360 F.3d at 1287. However, it allowed billboards, which were defined in a provision that made no mention of noncommercial signs, to be as large as 560 square feet. Id. at 1287 n.20. A panel of this Court determined that because the ordinance allowed commercial messages

15

to be displayed more prominently than noncommercial ideas, it had to be evaluated as a content-based restriction. See id. at 1289.

The Café Erotica ordinance was determined to be unconstitutional because it allowed commercial speech to be displayed on signs larger than those that could be used for noncommercial messages. We explained how Metromedia compelled that result:

> In Metromedia, the provision struck down allowed all onsite commercial billboards, but almost completely banned similar noncommercial signs. The instant case involves a similar unconstitutional preference, but in the form of greater size restrictions for noncommercial messages vis-á-vis commercial ones. While [the Café Erotica ordinance] does not involve a complete ban on political speech, neither did the Metromedia ordinance, as it provided several exemptions from the permitting requirements for certain noncommercial speech. Just as in Metromedia, "the [County] may not conclude that the communication of commercial information concerning goods and services connected with a particular site is of greater value than the communication of noncommercial messages. [Metromedia, 453 U.S.] at 513, 101 S. Ct. 2882. By limiting the size of political messages to roughly 1/17 that of commercial ones, that is precisely what the County has done.

Café Erotica, 360 F.3d at 1291 (second alteration in original). After determining that the ordinance in Café Erotica constituted an impermissible content-based restriction on noncommercial speech, we concluded that the city's stated goals of safety and aesthetics could not carry the day under a strict scrutiny analysis. Id. at 1291-92 ("In short, 'safety' and 'aesthetics' are not truly furthered by an ordinance

16

that allows one small, 'safe,' and visually pleasant [noncommercial] sign to be placed adjacent to a large, 'unsafe,' and aesthetically displeasing commercial billboard.")

The ordinance in this case suffers from the same constitutional vice as the one we struck down in Café Erotica. Here, the city allows some noncommercial signs. Thus, for example, it allows temporary political signs and campaign posters so long as they do not exceed 8 square feet in area. However, billboards, which at a maximum of 800 square feet are the largest signs the ordinance permits, are by definition limited only to commercial messages. See Ordinance § 2.0 (defining a billboard as an "off-premise sign which directs attention to a business, commodity, service or entertainment, sold or offered for sale at a location other than the premises on which said sign is located"). Thus, the largest signs allowed by the city's ordinance may contain only commercial messages.[6] Moreover, section 1.0

---

[6]This conclusion was confirmed by counsel for the city, who engaged in the following colloquy with the district judge:

The Court: So where is an off-premise sign expressed that is not commercial expressly permitted [in] the ordinance? What section?

Mr. Owens: Well, I don't think it is.

. . .

The Court: But you agree with me that there's no place in the ordinance that permits off-premise billboards that have non-commercial content?

Mr. Owens: Right.

17

of the ordinance makes clear that any sign not "specifically permitted" by the law is prohibited. Therefore, because section 20.0 is the sole provision allowing billboards, and because section 20.0 makes no mention of noncommercial speech and, indeed, statutorily limits billboards to those signs containing commercial speech, noncommercial billboards are not allowed in the City of Trussville.

Because section 20.0 undeniably favors commercial speech over noncommercial speech, it is a content-based restriction that will pass constitutional muster only if it is the least restrictive means of advancing a compelling government interest. See Solantic, 410 F.3d at 1258. The city nevertheless argues that section 20.0 is a valid time, place, and manner restriction that advances the substantial interests of health, safety, and aesthetics. However, as we noted in Café Erotica, that argument will not carry the day when billboards are permitted in precisely the same locations, but only for commercial messages. 360 F.3d at 1291. The city has offered no reason (and we can discern none) why it is any less safe or

To the extent the city now argues that section 3.0(O) allows noncommercial billboards, we are unpersuaded. Section 3.0(O) provides that "No off-premise signs shall be allowed except as provided in Section 20.0 . . . . However a sign which expresses a person's opinion, such as freedom of speech expressions, have no premise and can be erected if in conformity with the sign regulations for that respective zone." First, the argument that section 3.0(O) permits noncommercial billboards is directly contrary to what counsel told the district court. Second, section 3.0(O) is hardly a model of clarity, and we are not convinced that it would allow a noncommercial billboard. Nevertheless, to the extent that counsel believes section 3.0(O) allows noncommercial billboards, he should have raised that argument before the trial court instead of affirmatively agreeing to the contrary. See Miller v. King, 449 F.3d 1149, 1150 n.1 (11th Cir. 2006) (refusing to consider a claim raised for the first time on appeal).

18

aesthetic for a noncommercial billboard to abut an interstate highway than it is for a commercial billboard to occupy the very same location. See City of Cincinnati, 507 U.S. at 425-26, 113 S. Ct. at 1514-15 (rejecting "esthetics" as a justification for differing treatment because the banned commercial newsracks were just as visually unappealing as were the permissible noncommercial newsracks). Thus, the ordinance fails strict scrutiny and is unconstitutional.[7]

The district court did not engage in a discussion of the remaining injunction considerations, but they are easily satisfied in this case. Regarding irreparable injury, it is well established that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." Elrod v. Burns, 427 U.S. 347, 373, 96 S. Ct. 2673, 2690 (1976) (plurality opinion); see also Fla. Businessmen for Free Enter. v. City of Hollywood, 648 F.2d 956, 958 (5th Cir. Unit B June 1981) (quoting Elrod).[8] As we held in Northeastern Fla. Chapter of

_____

[7]For similar reasons, we agree with the district court's conclusion that the ordinance unconstitutionally discriminates against noncommercial speech over commercial speech by requiring political signs to be only temporary in nature, while allowing commercial signs to be displayed without time restrictions. Just as the city may not discriminate against noncommercial speech by limiting the size of noncommercial messages (as compared to the size of signs that may display commercial speech), it may not discriminate against noncommercial speech by limiting the time during which noncommercial messages may be displayed (as compared to the length of time permitted for commercial messages). See Solantic, 410 F.3d at 1264-65 (striking down a sign ordinance that prohibited the display of political signs for more than fourteen days before an election and two days after the election without imposing similar time restrictions on commercial signs or non-political noncommercial messages).

[8]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), we adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior

the Ass'n of Gen. Contractors of America v. City of Jacksonville,

> [t]he only area of constitutional jurisprudence where we have said that an on-going violation constitutes irreparable injury is the area of first amendment and right of privacy jurisprudence. The rationale behind these decisions was that chilled free speech and invasions of privacy, because of their intangible nature, could not be compensated for by money damages; in other words, plaintiffs could not be made whole.

896 F.2d 1283, 1285 (11th Cir. 1990) (citations omitted).

Although a violation of the First Amendment "does not automatically require a finding of irreparable injury, thus entitling a plaintiff to a preliminary injunction if he shows a likelihood of success on the merits," the injury in this case constituted "direct penalization, as opposed to incidental inhibition" of First Amendment rights and thus could not be remedied absent an injunction. Hohe v. Casey, 868 F.2d 69, 72-73 (3d Cir. 1989) (internal quotation marks omitted). Thus, although the district court did not make explicit findings as to irreparable injury, it did not abuse its discretion on those grounds, because the injury (categorically barring speech by prohibiting noncommercial billboards) was of a nature that could not be cured by the award of monetary damages. See Cate v. Oldham, 707 F.2d 1176, 1188-89 (11th Cir. 1983) (noting that "direct penalization, as opposed to incidental inhibition, of First Amendment rights constitutes irreparable injury" and that "[o]ne reason for such stringent protection of First

_____

to the close of business on September 30, 1981.

20

Amendment rights certainly is the intangible nature of the benefits flowing from the exercise of those rights; and the fear that, if these rights are not jealously safeguarded, persons will be deterred, even if imperceptibly, from exercising those rights in the future").

As for the third requirement for injunctive relief, the threatened injury to the plaintiff clearly outweighs whatever damage the injunction may cause the city. As noted, even a temporary infringement of First Amendment rights constitutes a serious and substantial injury, and the city has no legitimate interest in enforcing an unconstitutional ordinance. For similar reasons, the injunction plainly is not adverse to the public interest. The public has no interest in enforcing an unconstitutional ordinance. See Fla. Businessmen, 648 F.2d at 959 (noting that "[t]he public interest does not support the city's expenditure of time, money, and effort in attempting to enforce an ordinance that may well be held unconstitutional"); see also Joelner v. Vill. of Washington Park, 378 F.3d 613, 620 (7th Cir. 2004) (noting that "there can be no irreparable harm to a municipality when it is prevented from enforcing an unconstitutional statute because it is always in the public interest to protect First Amendment liberties" (internal quotation marks omitted)); Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati, 822 F.2d 1390, 1400 (6th Cir. 1987) (finding that the public's interest

21

is in "prevention of enforcement of ordinances which may be unconstitutional").

Quite simply, the district court did not abuse its discretion by enjoining the enforcement of section 1.0 of the ordinance. Each of the four factors we consider when determining whether injunctive relief is warranted weighs heavily in favor of granting KH Outdoor's request. And the district court imposed the least restrictive injunction possible by simply enjoining enforcement of that portion of the ordinance prohibiting signs not specifically provided for elsewhere in the ordinance. With that provision eliminated, section 20.0 provides regulations for commercial billboards, and nothing in the ordinance prohibits a sign of comparable size containing noncommercial speech. Accordingly, we affirm the injunctive order issued by the district court.

**AFFIRMED**.