[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 8, 2011
JOHN LEY
CLERK

_____

No. 09-11858

_____

D. C. Docket No. 07-00791-CV-TCB-1

NEWS AMERICA MARKETING IN-STORE, LLC,

Plaintiff-Counter-
Defendant-Appellee-
Cross-Appellant,

STATE OF MINNESOTA,

Plaintiff,

versus

ROBERT T. EMMEL,

Defendant-Counter-
Claimant-Appellant-
Cross-Appellee,

FLOORGRAPHICS, INC., et al.,

Intervenor-Defendant.

_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(June 8, 2011)

Before CARNES and PRYOR, Circuit Judges, and SEITZ,[*] District Judge.

PER CURIAM:

This case involves a dispute between Robert T. Emmel and his former
employer, News America Marketing In-Store, LLC, over Emmel's allegedly
improper disclosures of confidential information. Emmel contends that the
disclosures, which occurred during 2006 both while he was an employee and after
his termination in November of that year, were protected whistleblowing activity.
He argues that his contention is supported by the fact that he made the disclosures
to a variety of state and federal government offices, including the New York
Attorney General's office, the Securities and Exchange Commission, and the
Finance Committee of the United States Senate.

In April 2007 News America filed a suit against Emmel, seeking injunctive
relief and monetary damages based on numerous causes of action. Following the
parties' cross-motions for summary judgment, the district court granted summary

_____

[*]Honorable Patricia A. Seitz, United States District Judge for the Southern District of
Florida, sitting by designation.

2

judgment for Emmel on all of the claims in the complaint except one—on the claim that Emmel had breached the terms of a December 21, 2006 non-disclosure agreement, the court granted summary judgment for News America.[1] Based on its finding that Emmel had breached that agreement, the district court granted News America's motion for a permanent injunction barring him from any further disclosures of confidential information and requiring him to return certain property he had kept after his termination.

Our conclusion is that the district court's judgment is due to be affirmed in all respects except for its ruling that Emmel breached the December 21, 2006 agreement. Because we determine that ruling was in error, most of the district court's permanent injunction is due to be vacated. For reasons we will explain at the end of this opinion, however, we are also going to issue a temporary injunction in conjunction with the remand.

I.

Emmel started working for News America in 1999 as an account director in its Atlanta office. He sold News America's services to various retail chains, maintained relationships with those retailers, renewed contracts, contracted for new

---

[1]The court ordered a jury trial on the issue of damages and litigation costs stemming from that breach. It never occurred, however, because Emmel filed for bankruptcy under Chapter 7, and the bankruptcy court fully discharged him from the monetary claims that were awaiting trial.

business, and implemented various sales initiatives. In his position Emmel was privy to a wide variety of confidential and proprietary information.

In late 2005, the relationship began to sour. Emmel asserts that the reason that happened is he became convinced that News America "was engaged in widespread illegal activity against its customers, competitors, and shareholders" and that management intended to do nothing about it. See Appellant's Br. at 12. By contrast, News America argues that the deterioration in their relationship was triggered by a change in Emmel's job responsibilities.

Regardless, in January 2006 Emmel began disclosing News America's confidential information to people in a number of government offices. First, Emmel contacted the office of Senator Paul Sarbanes to discuss his concerns about News America, and he later sent the Senator's office a memorandum concerning News America's business practices along with 100 pages of News America's confidential information. Emmel's brief describes those documents as:

> substantial oral and documentary evidence of News's extensive billing and revenue-sharing fraud against its customers; its predatory and anti-competitive schemes against competitors Floorgraphics, Insignia, and Valassis; and News's fraudulent inflation of its reported earnings unbeknownst to its shareholders.

Appellant's Br. at 13. But to News America the documents were: "confidential contract terms, business strategies, financial terms with customers, financial plans,

4

and other financial data." Appellee's Br. at 11. In February 2006 Emmel made the same disclosures to the SEC and met with SEC staffers. Later that year he made disclosures to the New York Attorney General's Office, to the office of Senator Charles Grassley, and to the Finance and Judiciary Committees of the United States Senate. None of the disclosures was authorized by News America, and during all of that time Emmel remained a News America employee.

By November 2006, the relationship between Emmel and News America had turned from sour to bitter. News America had still not learned of Emmel's disclosures, but he had stopped coming into the office during regular work hours and had let others at the company know that he was looking for employment elsewhere. News America terminated him effective November 30, 2006.

In December 2006 Emmel became interested in a job with POP Radio, and he asked News America to tell POP that he was not obligated under any non-compete agreements. After some negotiations, News America agreed to provide Emmel with a letter explaining that he was not under a non-compete agreement, and he in turn agreed to sign a post-employment agreement that included a promise he would not disclose any of News America's confidential information or disparage the company. That agreement was signed on December 21, 2006. The part of the agreement that is relevant to this appeal includes the following promise:

5

> Emmel agrees that he will not disparage, denigrate or defame the Company and/or related persons, or any of their respected business products, practices or services. Emmel further agrees that he will maintain in complete confidence, and not discuss, share, reveal, disclose or make available to any third party or entity any "Confidential Information" of the Company.

The agreement goes on to broadly define "confidential information" to include: "all trade secrets and information . . . and/or compilations of information that was disclosed to or acquired by Emmel . . . that relates to the business of the Company and is not generally available to the public or generally known in the Company's industry."

But here's the kicker: the day before he signed the agreement, Emmel sent out one more batch of News America's confidential information. On December 20, 2006, he placed in regular mail a package of around 55 pages of News America's internal documents and confidential information. The package was mailed to Nick Podsiadly, a staffer for the U.S. Senate's Finance Committee who had been in regular e-mail contact with Emmel and had met with him in Washington the previous month. The timing of this disclosure was obviously no coincidence: Emmel even admitted in his deposition, "[M]y goal was to make sure that information got out before I would be signing an agreement."

## II.

In support of its breach of contract claim, News America argued two

6

different theories to the district court. First, it contended that various company policy documents, including its "Electronic Communications Policy," "Standards of Business Conduct Policy," and "Insider Trading and Confidentiality Policy" had created a binding non-disclosure agreement that Emmel had violated by making disclosures throughout 2006. Second, and more specifically, News America contended that Emmel had breached the terms of the December 21, 2006 agreement by his actions and inactions regarding the confidential information he mailed on December 20, 2006 to Nick Podsiadly at the Senate Finance Committee.

The district court rejected the first contention, granting summary judgment to Emmel on News America's claim for breach of contract to the extent it was based on the company's policy documents. We reject that contention too, and do so for the reasons the district court laid out on pages 13–16 of its March 13, 2009 order.[2]

The district court accepted News America's second contention, however, reasoning that even though Emmel had mailed the package of documents before he signed the agreement, "it is undisputed that the confidential documents had not reached their destination by December 21 and thus could not yet have been viewed

---

[2]We also agree with the district court's rejection of the other theories and claims that News America put forward in support of a permanent injunction, and affirm the judgment to the extent that the district court did reject them.

by anyone until that point." The court found it "significant" that Emmel did nothing to prevent the impending disclosure after he signed the agreement. By not making an attempt to stop Podsiadly and the Senate Finance Committee from viewing the documents, the court reasoned, "[Emmel] clearly breached the non-disparagement provision of the agreement."

## III.

Two standards of review govern this appeal. "We review grants of summary judgement <u>de novo</u>, using the same legal standard as the district court. Summary judgment is appropriate when the pleadings, depositions and affidavits show that there is no genuine issue of material fact and that the moving party is entitled to judgement as a matter of law. In making this assessment, we must view the evidence in the light most favorable to the nonmoving party." <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1326 (11th Cir. 1998) (citations omitted). By contrast, we review only for abuse of discretion a decision to grant an injunction. <u>United States v. Endotec</u>, 563 F.3d 1187, 1194 (11th Cir. 2009). And findings of fact upon which the court bases its decision to grant the injunction are reviewed only for clear error. <u>Id.</u>

## IV.

Emmel contends that the district court wrongly concluded that his mailing of

confidential information on December 20, 2006, breached the terms of the non-disclosure agreement he signed on December 21. He argues that the court's reasoning "disregards the basic rule that a contract operates only prospectively from execution absent language of retroactive effect." Appellant's Br. at 34. He points us to the language of the promises he made in the agreement, noting that they are all phrased in the simple future tense. In the agreement Emmel promises that he "will not disparage, denigrate or defame the Company" and that he "will maintain in complete confidence" all of News America's confidential information. To capture his pre-contract conduct, Emmel reasons, the promises would have needed to be phrased in the present perfect tense—i.e., "Emmel agrees he has not disparaged, denigrated or defamed the company" and that he "has maintained in complete confidence" News America's confidential information.[3]

We agree. The December 21, 2006 agreement contains no language that indicates the parties intended for it to apply retroactively or that provides assurance about any past events or actions. The specific promises undertaken were couched

---

[3] For what it's worth, the simple past tense also could have been used to capture Emmel's pre-contract conduct. For example, if the agreement had read: "Emmel agrees he did not disparage, denigrate, or defame" and that he "did maintain in complete confidence" News America's confidential information.

in language that applies only prospectively.[4]  The agreement, therefore, covered only acts occurring after it was executed on December 21.

We also conclude that Emmel's act of disclosure or disparagement occurred when he mailed the package of materials on December 20, 2006.  The record does not establish that a person can claw back a package once it has been mailed, nor is there any evidence that the addressee would have returned the package unopened if only Emmel had asked.  In any event, the language of the agreement does not cover acts of omission or inaction, only acts of commission.  Finally, to whatever extent there is any ambiguity in the agreement as to what acts are covered and what are not—and that really is the most that can be said for News America's side of the argument—that ambiguity is generally construed against the drafter of the contract.

---

[4]The contract at issue here states that it is to be governed by New York law.  The parties agree, however, that Georgia courts apply Georgia public policy principles when determining the validity of a nondisclosure provision that they are asked to enforce.  See Nasco, Inc. v. Gimbert, 238 S.E.2d 368, 369 (Ga. 1977) ("The law of the jurisdiction chosen by parties to a contract to govern their contractual rights will not be applied by Georgia courts where application of the chosen law would contravene the policy of, or would be prejudicial to the interests of, this state. Covenants against disclosure, like covenants against competition, affect the interests of this state, namely the flow of information needed for competition among businesses, and hence their validity is determined by the public policy of this state." (citations omitted)).

But whether Georgia or New York law applies here does not matter.  The only example we have been able to identify of retroactive application of a contract is "where the contract expressly states that its terms are to take effect at an earlier date." Am. Cyanamid Co. v. Ring, 286 S.E.2d 1, 3 (Ga. 1982); accord Colello v. Colello, 780 N.Y.S.2d 450, 453 (N.Y. 2004) ("It is fundamental that where parties to an agreement expressly provide that a written contract be entered into 'as of' an earlier date than that on which it was executed, the agreement is effective retroactively 'as of' the earlier date and the parties are bound thereby accordingly." (quotation marks omitted)).

Restatement (Second) of Contracts § 206 (1981). The drafter was News America. If it had wanted the agreement to cover past acts or future inaction, New America should have written the agreement to say that.

For these reasons, our de novo review requires us to hold that Emmel did not breach the terms of the agreement he signed on December 21, 2006, by mailing a package of materials on December 20, 2006, because he had not yet agreed in writing to those terms. The district court's summary judgment for News America on that theory is due to be vacated. Whether News America is entitled to summary judgment on some other theory not reached by the district court is a matter about which we express no opinion.

V.

We turn now to the permanent injunction. The district court based that injunction on the sole claim on which News America had succeeded—the breach of contract claim. The court's injunction reads as follows:

> [T]he Court hereby (1) PERMANENTLY ENJOINS AND
> RESTRAINS Emmel, his agents, servants, employees, attorneys, and
> any other persons who are acting in concert with them, from
> discussing, sharing, revealing, disclosing, or making available to any
> third party or entity any "Confidential Information" of [News
> America] . . .

Because we are vacating the district court's summary judgment for News America, we must also vacate the permanent injunction the district court entered

11

on its behalf. See KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1268 (11th Cir. 2006) ("For a permanent injunction . . . the movant must establish actual success on the merits . . . .").[5]

We offer the following guidance to the district court on remand. Should News America seek to amend its complaint and add a claim seeking a declaratory judgment that sets out the rights of the parties in this case, the court should consider whether such an amendment is justified at this stage and whether permanent injunctive relief, grounded in a potential declaratory judgment, may be necessary to safeguard those rights.

## VI.

We take one further step to preserve the district court's jurisdiction and safeguard the rights of the parties before us, particularly the rights of News America to protect its confidential information from improper disclosure. The record before us leaves no doubt that Emmel has shown a propensity to disclose News America's confidential information to government officials and agencies,

---

[5]Emmel does not contest the district court's injunction to the extent that it required him to return certain property belonging to News America, including three compact discs containing a copy of the hard drive from the computer he used during his employment. He insists that he has already returned that property. Nothing that we say should be misinterpreted to imply that he is entitled to have that property returned to him.

12

whether those disclosures can be justified on grounds of public policy or not.[6]  We are also concerned by the fact that a significant proportion of Emmel's legal fees are being paid by News America's competitors, some of whom have been involved in other litigation with the company.  None of the obvious inferences that can be drawn from that fact are favorable to Emmel.

For these reasons, we think it necessary and proper to issue at the same time as this opinion our own temporary injunction to preserve the status quo while this case is on remand to the district court.  That separate injunction will incorporate the essence of the district court's permanent injunction, but with one clarification.  Our temporary injunction will explicitly provide that nothing in it prevents Emmel from complying with grand jury or court-issued subpoenas or from cooperating with law enforcement authorities in any formal investigations of News America.

## VII.

The district court's judgment is AFFIRMED IN PART AND VACATED IN PART, and the case is REMANDED to the district court for proceedings consistent with this opinion.

---

[6]Because we determine there was no contractual breach before December 21, 2006, we decline to address the merits of Emmel's lengthy arguments that his disclosures are justified on grounds of public policy.