**DEVELOPERS SURETY AND INDEMNITY COMPANY, a foreign corporation, Plaintiff,**

v.

**BI-TECH CONSTRUCTION, INC., a Florida corporation, and Rafael I. Aguado, individually, Defendants.**

**Case No. 13–22767–CIV.**

United States District Court,
S.D. Florida.

Aug. 19, 2013.

---

**1306**

Edward Etcheverry, Jeffrey Scott Geller, Etcheverry & Harrison LLP, Plantation, FL, for Plaintiff.

Jon Michael Kendrick, Valdini & Palmer, Fort Lauderdale, FL, for Bi–Tech Construction, Inc. and David J. Valdini & Associates, P.A.

Rafael I. Aguado, Pro Se.

1. These facts are based on the Complaint [DE 1] and the various briefs and exhibits relating

## ORDER GRANTING MOTION FOR PRELIMINARY INJUNCTION

WILLIAM P. DIMITROULEAS, District Judge.

THIS CAUSE is before the Court upon Plaintiff's Motion for Preliminary Injunction (the "Motion") [DE 5] filed herein on August 2, 2013. The Court has carefully considered the Motion [DE 5], Defendants' Response [DE 12], Plaintiffs' Reply [DE 13], the record, and all other evidence presented at the hearing held on August 16, 2013. The Court is otherwise fully advised in the premises.

## I. BACKGROUND [1]

The parties to this action are Plaintiff Developers Surety and Indemnity Company ("Plaintiff" or "Surety") and Defendants Bi–Tech Construction, Inc. ("Bi–Tech") and Rafael I. Aguado (together with Bi–Tech, "Defendants" or "Imdemnitors"). Defendants are contractors. Plaintiff acts as a surety on construction projects.

On October 16, 2012, City of Florida City, FL ("City" or "Owner") awarded a contract to Bi–Tech to install a new emergency generator system (the "Project"). The Project was worth $670,153.64. Plaintiff, acting as surety, issued two bonds (the "Performance Bond" and the "Payment Bond") on behalf of Bi–Tech.

Plaintiff and Defendants had previously entered into an indemnity agreement (the "Indemnity Agreement") to govern Plaintiff's issuance of bonds for Defendants' projects. The Indemnity Agreement applies to the Performance and Payment Bonds.

to the Motion. *See* [DE 5, 12, 13].

The Indemnity Agreement provides, in part, the following:

> Indemnitor ... shall indemnify and hold harmless Surety from and against any and all liability, loss claims, demands, costs, damages, attorneys' fees and expenses of whatever kind or nature ... which Surety may sustain or incur by reason of or in consequence of the execution and delivery by Surety of any Bond on behalf of Principal....
>
> * * *
>
> Principal and Indemnitor shall, upon request of Surety, procure the discharge and exoneration of Surety under any Bond and from and against any and all liability by reason thereof.
>
> * * *
>
> Indemnitor shall, immediately upon demand and whether or not Surety shall have made any payment therefor, deposit with Surety a sum of money equal to such reserve account and any increase thereof as collateral security on such Bond.... If Indemnitor shall fail, neglect or refuse to deposit with Surety the collateral demanded by Surety, Surety may seek a mandatory injunction to compel the deposit of such collateral together with any other remedy at law or in equity that Surety may have.
>
> * * *
>
> Principal and Indemnitor ... agree to hold all money and all other proceeds for the Obligation, however received, in trust for the benefit of Surety and to use such money and other proceeds for the purposes of performing the Obligation and for discharging the obligations under the Bond, and for no other purpose until the liability of the Surety under the Bond is completely exonerated.

[DE 5 at 4–5].

Bi–Tech started work on the Project on or about March 1, 2013. On or about March 25, 2013, Bi–Tech submitted its first payment application to City, seeking payment of $313,645.32 for work performed. Bi–Tech, in turn, owed payment to two subcontractors: General Construction Master Corp. ("GCM") and City Electric Supply Co. ("City Electric").

City declined to pay the full amount because City had originally estimated that the Project would require 1,560 feet of trenching work, whereas, in actuality, Bi–Tech had needed to perform only 1060 feet of trenching work. Accordingly, City paid only $219,896.82. Bi–Tech objected to the diminished payment, maintaining that its bid for the Project had been based upon its own assessment of the feet of trenching work rather than on City's overestimate. Therefore, Bi–Tech was unable to cover the Project costs without receiving the full amount.

On May 29, 2013, Bi–Tech advised City that Bi–Tech could not complete the Project unless full payment was made. On the same day, City issued a Notice of Termination of Bi–Tech with respect to the Project.

Plaintiff and City subsequently negotiated an agreement that would require City to pay Bi–Tech for the full amount claimed and to reinstate Bi–Tech on the Project. Plaintiff then provided to Bi–Tech a memorandum of understanding (the "MOU"), outlining that agreement. However, Bi–Tech objected to certain provisions and refused to execute the MOU. For example, the MOU would have required Bi–Tech to obtain Plaintiff's consent prior to receiving any future payments by City. Additionally, all future payments would be held in a third party trust account prior to Plaintiff's authorization for distribution.

Bi–Tech purportedly retains at least $180,000.00 in trust from the original Project payment from City. Bi–Tech continues to owe $172,000.00 to City Electric. More-

over, on July 3, 2013, City Electric initiated a state court action against Plaintiff for damages in the amount of $172,900.50 pursuant to the Payment Bond.

On July 24, 2013, Plaintiff formally demanded that Indemnitors distribute the $180,000.00 to GCM and City Electric. Indemnitors refused. Thereafter, Plaintiff deposited $205,000.00 in a reserve account and, on July 29, 2013, demanded that Indemnitors, pursuant to the Indemnification agreement, immediately post collateral security in that amount.

On August 1, 2013, Plaintiff filed this action, bringing the following counts: Count I—Breach of Contract (against Indemnitors); Count II—Specific Performance for Production of Books and Records (against Indemnitors); Count III—Contractual Exoneration (against Indemnitors); Count IV—Common Law Exoneration (against Bi–Tech; Count V—Breach of Contract for Damages / Demand for Indemnification (against Indemnitors); Count VI—Common Law Indemnification (against Bi–Tech); and Count VII—Quia Timet (against Indemnitors).

On August 2, 2013, Plaintiff filed the instant Motion [DE 5]. Plaintiff originally sought an injunction requiring the Indemnitors to:

(1) immediately produce proof of $8,000.00 payment to GCM and $172,000.00 to City Electric; or, in the alternative,

(2) provide the sum of $205,000.00 to Plaintiff as trust funds/security for Plaintiff's use in conjunction with the Indemnity Agreement and Performance and Payment Bonds.

See [DE 5 at 15–16]. During the August 16, 2013, hearing, however, Plaintiff withdrew the request for alternative relief and specified that it was seeking only the immediate deposit of $205,000.00 in trust.[2]

## II. DISCUSSION

### A. Standard of Review

■■■ A district court has broad discretion in granting or denying a preliminary injunction. *Sierra Club v. Ga. Power Co.*, 180 F.3d 1309, 1310 (11th Cir.1999); *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir.1983). In order to obtain a preliminary injunction, the plaintiff must establish (1) a substantial likelihood that it will prevail on the merits of the underlying cause of action; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to the plaintiff outweighs the threatened harm the injunction may have on the defendant; and (4) that the public interest will not be adversely affected by granting the preliminary injunction. *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1268 (11th Cir.2006); *Ala. v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir.2005). The general purpose of an injunction "is to protect against irreparable injury and preserve the status quo until the district court renders a meaningful decision on the merits." *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir.2005). A "preliminary injunction is an extraordinary and drastic remedy not to be granted until the movant clearly establishe[s] the burden of persuasion as to each of the four prerequisites." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir.2000) (internal quotations omitted). Nevertheless, "[t]o support a

**2.** Additionally, the Court provided Defendants with a short period to affirmatively comply with Plaintiff's alternative request that all subcontractors—e.g. City Electric and GCM—be paid in full. Defendants chose not to comply and now face an injunction requiring an immediate payment of $205,000.00 of trust funds.

preliminary injunction, a district court need not find that the evidence positively guarantees a final verdict in plaintiff's favor." *Levi Strauss & Co. v. Sunrise Int'l Trading, Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). Rather, the court must determine whether the evidence establishes each of the four prerequisites. *Id.* When undertaking that analysis, the "court may rely on affidavits and hearsay materials which would not be admissible evidence for a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding." *Id.* (internal quotations omitted).

## B. *Analysis*

### 1. Whether There Is a Substantial Likelihood of Success on the Merits

 Plaintiff has satisfied this element. Article 3 of the Indemnity Agreement provides as follows:

If Surety shall establish a reserve account to cover any liability, claim asserted, suit or judgment under any Bond, the Indemnitor shall, immediately upon demand and whether or not Surety shall have made any payment therefor, deposit with Surety a sum of money equal to such reserve account and any increase thereof as collateral security on such Bond, and such sum and other money and property which shall have been or shall thereafter be pledged as collateral security on any such Bond shall be available, at the discretion of Surety, as collateral security on all Bonds coming within the scope of this Agreement or for any other indebtedness of Indemnitor or Principal to Surety. If Indemnitor shall fail, neglect or refuse to deposit with Surety the collateral demanded by Surety, Surety may seek a mandatory injunction to compel the deposit of such collateral together with any other reme-

dy at law or in equity that Surety may have. Surety shall have the right to retain such collateral until Surety has received evidence satisfactory to Surety of Surety's complete discharge and exoneration from any claim or potential claim under all Bonds and until Surety has been fully reimbursed for any and all liability incurred or for claims, demands, damages, costs, loss, expense and attorneys' fees.

[DE 5–2 at 2]. It is undisputed that Plaintiff, as Surety, has established a reserve account of $205,000.00 to cover liability under the bonds. It is also undisputed that City Electric has filed suit against Plaintiff on the Payment Bond, exposing Plaintiff to at least $172,900.50 in potential liability. *See* [DE 13–1]. Accordingly, under the clear terms of the Indemnity Agreement, Defendants must "deposit with Surety a sum of money equal to such reserve account." And Plaintiff has the right to seek an injunction to compel that deposit.

Finally, Defendants two primary arguments against the injunction are unpersuasive. First, Defendants argue that Plaintiff, by requiring overly restrictive terms in the MOU, has, in bad faith, obstructed Defendants' ability to resolve its disputes with City, resume work, and eliminate the need for injunctive relief. Therefore, Plaintiff's is not entitled to the requested injunction.

The Court disagrees. Article 3 of the Indemnity Agreement unequivocally requires Defendant to pay a sum equal to the current reserve account. There are no restrictions pending negotiations or settlement talks. Therefore, even if Plaintiff has thwarted a potential settlement between Defendants and City—a conclusion which the record does not necessarily support—Plaintiff is entitled to the requested payment pending settlement of all substan-

tive issues of liability between all relevant parties. *See Developers Sur. & Indem. Co v. Electric Serv. & Repair, Inc.,* No. 09–21678–CIV, 2009 WL 3831437 (S.D.Fla. Nov. 16, 2009).

Second, Defendant argues that City Electric, by failing to adhere to mandatory notice requirements, cannot recover on its affirmative claims against Plaintiff. Therefore, Plaintiff faces no liability to City Electric.

This argument is similarly unpersuasive. Once again, Plaintiff has a contractual right to the requested deposit of $205,000.00 by Defendants. It is irrelevant whether Plaintiff may subsequently prevail in defending the current state court action initiated by City Electric. *See, e.g., Liberty Mut. Ins. Co. v. Aventura Eng'g & Const. Corp.,* 534 F.Supp.2d 1290, 1310 (S.D.Fla.2008) ("Nowhere in these provisions does the Indemnity Agreement require that the owner's claim on the bond be valid before [the surety] may exercise its contractual rights to indemnity, exoneration, assignment and settlements of claims. Rather, these provisions unequivocally state that [the surety]'s rights arise once [the surety] determines that it may incur potential liability and that actual liability need not be shown.").

**2. Irreparable Injury, Balance of Harms, and Public Interest**

 Plaintiff has satisfied the remaining elements as well. It has a contractual right to the requested funds at this stage where it faces potential liability. Absent an injunction, Plaintiff would suffer the harm of having its rights under the Indemnity Agreement effectively nullified. Plaintiff would be unsecured against claims and loss while Defendants would be free to sell, transfer, or conceal their assets to avoid their obligations. *See Devel-*

*opers Sur. & Indem. Co.,* 2009 WL 3831437, at *2.

 On the other hand, Defendants would not suffer harm from complying with their contractual obligations. Moreover, through the merits of this—and/or any related—litigation, Defendants can seek redress for any monetary harm they may suffer. And any harm they may suffer is outweighed by the potential injury to Plaintiff absent an injunction. *See id.*

 Finally, the requested injunction comports with the public interest in enforcing contracts and maintaining the solvency of the surety companies that support public construction projects. *See id.*

**C. Security Bond**

 Having found that a preliminary injunction is warranted, the Court will now establish the proper level of security that Plaintiffs must provide for that injunction. Federal Rule of Civil Procedure 65 requires a party moving for an injunction to give security "in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." *See* Fed.R.Civ.P. 65(c).

The Court finds that Plaintiff need not post a bond. First, it would defeat the purpose of the instant injunction if Plaintiff had to offset the bond to be posted by Defendants. Second, if Defendants ultimately succeed on the merits of this litigation, they could obtain the return of the $205,000.00. Third, Defendants indicated at the August 16, 2013, hearing that they were not seeking a bond if the injunction were granted. Accordingly, the Court will exercise its discretion to dispense with the filing of a bond. *See, e.g., Popular Bank of Fla. v. Banco Popular de Puerto Rico,* 180 F.R.D. 461, 464–65 (S.D.Fla.1998) ("[T]he Court finds that the posting of a bond is not a jurisdictional prerequisite to the validity of a preliminary injunction.").

### III. *CONCLUSION*

For the foregoing reasons, it is **ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Motion [DE 5] is hereby **GRANTED**;

2. Defendants shall, on or before August 20, 2013, provide the sum of $205,000.00 directly to Plaintiff as "trust funds" and collateral security to be utilized in accordance with the Indemnity Agreement and Bonds.

