YARRUT, Judge.
This is an appeal by Plaintiff from a judgment dismissing his suit for damages for wrongful seizure of dry-cleaning equipment purchased from Defendant.
Plaintiff purchased the equipment with a $3.78 down payment and a $6,598.08 promissory note secured by a chattel mortgage on all the equipment in his self-service laundry. The dry-cleaning equipment was installed September 26, 1961. Plaintiff left New Orleans for military service October 8, 1961. The equipment was later surrendered to, and removed by, Defendant October 23, 1961 for the cancellation of all indebtedness due by Plaintiff.
Plaintiff contends the equipment was wrongfully seized by Defendant without his authorization; while Defendant contends it was removed at the request of Plaintiff’s mother, Mrs. Henrietta Pailet, who was either a joint-adventurer in the business, or the agent of her son. Plaintiff claims his only agent was his sister, Marion Pailet, whom he left in charge of the business when he left for military service. However, at the trial, it was adduced that only Mrs. Pailet dealt with Defendant, making many telephone calls to its office complaining about the malfunction of the dry-cleaning machines; that it was Mrs. Pailet who negotiated an extension of the fii'st payment due on her son’s note; and it was she who-had a meeting with the district manager, Mr. Daniel Schusterman, which resulted in the agreement for the removal of the machines. With regard to this meeting, Mr. Schusterman testified Mrs. Pailet was very agitated when she came to see him at his office; that he asked her what she wanted him to do about the situation; and she answered she wanted the machines removed. On the other hand, Mrs. Pailet testified that, when Mr. Schusterman mentioned removing the machines, she said *422 she had no authority to authorize their removal.
The trial judge concluded Mrs. Pailet was a principal in the business, had authority to authorize the removal of the machines, and did, in fact authorize their removal. In this connection the trial judge, in his reasons for judgment, said:
“Plaintiff’s witnesses convinced the court that Mrs. Henrietta Pailet was a principal in Pailet’s self-service laundry.' Even though Ellis Pailet incurred the obligation to A L D, Inc., Pailet’s self-service laundry was a family business being operated by Ellis Pailet, Marion Pailet and Mrs. Henrietta Pailet. Ellis Pailet attended Louisiana State University during the summer session of 1961 and attended Tulane University that fall until leaving New Orleans on October 8, 1961, at which time Ellis went to Fort Sill, Oklahoma, as a member of the armed forces. During his absence from New Orleans while attending LSU and while serving in the armed forces, the business was operated by Marion Pailet and Mrs. Henrietta Pailet. Marion Pailet had a regular job at the Marine Hospital in New Orleans. Mrs. Pailet did not work. After Ellis returned from the summer session at LSU, he resided with his wife in the Tulane Apartments. Even so, invoices continued to be sent to Henrietta Pailet’s address at 321 Crystal Street. The Pailet laundry displayed a telephone number for customers to call in case assistance was needed. This telephone was listed in the name of Mrs. Pailet and located in her home. Mrs. Pailet answered the phone when she was at home and made note of the caller’s request. Mrs. Pailet paid Ellis’s tuition, bought his clothes, paid his charge accounts, and even paid his income tax. A L D, Inc., dealt with Ellis Pailet and Mrs. Pailet. Mrs. Pailet negotiated an extension of the first payment and agreed with A L D, Inc., that the machines would be removed in consideration for a cancellation of the obligation assumed by Ellis Pailet. The plaintiff, Ellis Pailet, is bound by the agreement of Mrs. Pailet and A L D, Inc., and has no liability arising out of its fulfillment of that agreement with Mrs. Pailet.
“Even if the court had not decided that Mrs. Henrietta Pailet was a principal in the Pailet self-service laundry, plaintiff’s witnesses convinced the court that the laundry was being operated as a family business and that Mrs. Pailet had apparent authority to contract with A L D for the removal of the dry-cleaning equipment.”
After Plaintiff learned of the removal of the machines, he made no effort to contact Defendant to repudiate his mother’s agreement, but he did contact his lessor in order to arrange to vacate that area of the premises where the machines were located, and to surrender that portion of the leased premises. Further, he made no attempt to replace the dry-cleaning machines since he abandoned that portion of the business. Even assuming, arguendo, that Mrs. Pailet was only acting as an agent and not as a principal, since Plaintiff accepted the benefits of her agreement and, by his subsequent behavior, ratified it, he is now precluded from repudiating it, even though his mother may have exceeded the authority he gave her. See Francis v. Bartlett, La.App., 121 So.2d 18; Jeffrey Motor Co. v. Higgins, 230 La. 857, 89 So.2d 369, 3 Am.Jur.2d “Agency” sec. 160; 2 C.J.S. Agency § 49, p. 1097.
However, even though we have concluded the machines were removed with proper authorization, we must also consider Plaintiff’s other two contentions: (1) That Defendant’s repossession of the machines constitutes a violation of the Soldiers’ and Sailors’ Civil Relief Act, 50 U.S.C.A. (App.) sec. 501 et seq.; and (2) Because of the redhibitory vices of the equipment, Defendant is bound under LSA-C.C. art. 2531 to restore not only the purchase price but the expenses occasioned by the sale.
*423 Regarding the first contention, the applicable section of the Civil Relief Act relating to installment contracts for the purchase of property, 50 U.S.C.A. (App.) sec. 531 provides, inter alia:
“(1) No person who has received, or whose assignor has received, under a contract for the purchase of real or personal property, or of lease or bailment with a view to purchase of such property, a deposit or installment of the purchase price, or a deposit or installment under the contract, lease, or bailment, from a person or from the assignor of a person who, after the date of payment of such deposit or installment, has entered military service, shall exercise any right or option under such contract to rescind or terminate the contract or resume possession of the property for nonpayment of any installment thereunder due or for any other breach of the terms thereof occurring prior to or during the period of such military service, except by action in a court of competent jurisdiction.”
This section is not applicable here because Defendant did not exercise any right to rescind the contract for nonpayment of installments or breach thereof, but simply removed the equipment at the request of and by agreement with the Plaintiff’s agent.
Plaintiff also cites 50 U.S.C.A. (App.) sec. 517 which provides, inter-alia:
“Nothing contained in this Act * * * shall prevent—
(a) the modification, termination, or cancelation of any contract, lease, or bailment or any obligation secured by mortgage, trust deed, lien, or other security in the nature of a mortgage, or
(b) the repossession, retention, foreclosure, sale, forfeiture, or taking possession of property which is security for any obligation or which has been purchased or received under a contract, lease, or bailment, pursuant to a written agreement of the parties thereto (including the person in military service concerned, or the person to whom section 106 [section 516 of this Appendix] is applicable, whether or not such person is a party to the obligation), or their assignees, executed during or after the period of military service of the person concerned * *
We conclude this section was designed to provide an exception to enable servicemen to waive in writing protection given them in other sections of the Act, but was not meant to prohibit servicemen or their duly authorized representatives from entering into any verbal agreement when such agreement did not waive any rights guaranteed by the Civil Relief Act.
The purpose of the Civil Relief Act is stated in 50 U.S.C.A. (App.) sec. 510 which provides, inter alia:
“ * * * the following provisions are made for the temporary suspension of legal proceedings and transactions which may prejudice the civil rights of persons in such service during the period herein specified * *
In the instant case, Plaintiff was not prejudiced by the action of his co-adventurer or agent, but was actually relieved of the obligation to pay for the equipment, in which he later acquiesced.
The cases decided under the Civil Relief Act cited by Plaintiff are not apposite here. In Godwin v. Gerling, 362 Mo. 19, 239 S.W.2d 352, 40 A.L.R.2d 1250, the decision was actually against the serviceman, the court holding that the serviceman-owner of an unrecorded claim to land was not entitled to have the foreclosure set aside against innocent purchasers. Hoffman v. Charlestown Five Cents Savings Bank, 231 Mass. 324, 121 N.E. 15 concerned a foreclosure of a mortgage against the serviceman, and Bassham v. Evans, 216 S.W. 446 (Tex.Civ.App.) involved a wrongful sequestration of a serviceman’s premises without notice to him.
*424 In the instant case' we are not concerned with a foreclosure due to nonpayment or breach of contract, hut rather a voluntary surrender by Plaintiff of the equipment in exchange for a cancellation of his indebtedness, even though Plaintiff had used Defendant’s equipment for a month in his own business, with no benefit to Defendant.
In answer to Plaintiff’s demand for damages resulting from redhibitory vices, Defendant cites the sales agreement which excludes all express or implied warranties and specifies Defendant is not liable for consequential or special damages. Assuming, arguendo, that this agreement does not exclude implied-in-law warranty, we hold Defendant should not be held liable for the approximately $1100 Plaintiff claims he expended in advertising, preparation for the installation of equipment, maintenance service on the machines, and cleaning materials, for the following two reasons: (1) The agreement to remove the machines and cancel the indebtedness constituted a full settlement between the parties. Mr. Schus-terman testified that when he asked Mrs. Pailet if she would be satisfied if he would take out the machines and tear up the contract, she answered that this would be fine with her. This testimony is believable because, if Mr. Schusterman had not considered this a final settlement of the affair, it is doubtful that he would have been willing to cancel Plaintiff’s entire indebtedness, especially when Plaintiff had the use of Defendant’s equipment for a month for only $3.78. (2) It was the Pailets who occasioned the loss by the termination of their dry-cleaning operation. All the expenses listed by Plaintiff were those incident to the initiation of a self-service dry-cleaning business. This business was actually in operation for a month even though there was difficulty with the machines, which Defendant was constantly attempting to remedy. It was Mrs. Pailet’s decision to have the machines removed, and Plaintiff’s decision to withdraw from that phase of his business by taking immediate steps to cancel the lease for the space used by the machines, and made no attempt to mitigate his alleged “damages” by acquiring and installing new machines.
For the above reasons the judgment appealed from is affirmed; Plaintiff to pay all costs in both courts.
Judgment affirmed.