United States Court of Appeals,

Fifth Circuit.

No. 93-2719.

John T. ENGSTROM, and Lyndia Engstrom, Individually and as next friends for Andrea Engstrom, John T. Engstrom, Melissa Engstrom and Cynthia Engstrom, Etc., et al., Plaintiffs-Appellants, Cross-Appellees,

v.

The FIRST NATIONAL BANK OF EAGLE LAKE, Defendant-Appellee, Cross-Appellant.

March 29, 1995.

Appeals from the United States District Court for the Southern District of Texas.

Before JONES and STEWART, Circuit Judges, and DUPLANTIER[*], District Judge.

STEWART, Circuit Judge:

John T. Engstrom and his family appeal the judgment of the district court dismissing their claims under the Soldiers' and Sailors' Civil Relief Act, 50 U.S.C.App. §§ 501-593 against the First National Bank of Eagle Lake ("First National"). First National has filed a cross-appeal of the district court's judgments to allow the original complaint to be amended and to remand the state law claims to state court. For the following reasons, the judgments of the district court are affirmed.

BACKGROUND

John T. Engstrom operated a rice farm in Texas. His farm was financed by the First National Bank of Eagle County. Engstrom owed

---

[*]District Judge of the Eastern District of Louisiana, sitting by designation.

approximately $412,600 to First National. Part of this debt was secured by the equipment used on the farm. In October 1989, John Engstrom was called to active military duty and was deployed to the Middle East. Prior to his departure, Engstrom made arrangements with First National for a neighbor, James Clipson, to carry out the orderly sale of Engstrom's equipment, as necessary, to meet payments due on the outstanding loans. Engstrom met with Travis Wegenhoft, First National's vice president, and obtained First National's consent to sell the equipment at private sales and to apply the sales proceeds to the loan balances. Some pieces of equipment were sold as a result of private sales, but on January 26, 1991, most of the equipment was sold at auction.

The equipment was moved to the auction site by Clipson. Sam Thompson, a senior vice president with First National, contacted the auctioneer and arranged a location for the auction. Equipment belonging to Engstrom and other farmers in the area was auctioned. Both Mr. Thompson and Wegenhoft were present at the auction. Following the auction, Mr. Wegenhoft signed Mr. Engstrom's name to the checks for Engstrom's portion of the proceeds, and had the proceeds applied to Engstrom's outstanding debt.

Tom Engstrom and Lyndia Engstrom, individually and on behalf of their children Andrea Engstrom, John T. Engstrom, Melissa Engstrom and Cynthia Engstrom d/b/a JTE Farms Joint Venture, and Coltair Farms, Inc. (collectively "Engstrom") filed suit in state court alleging that First National had violated the strictures of the Soldiers' and Sailors' Civil Relief Act ("Relief Act") which

2

forbid the sale of the property during a military personnel's service period without a court order.  He also filed pendent state claims.  First National removed the suit to federal court.

First National filed a motion for summary judgment contending that it had not violated the Relief Act.  Engstrom also filed a motion to amend his complaint.  The district court granted both motions and then remanded the state law claims to state court.  Engstrom appeals the judgment of the district court dismissing his federal claims;  First National has filed a cross-appeal contending that the district court erred in allowing Engstrom to amend his complaint.

STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo.  Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.), *cert. denied,* --- U.S. ----, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).  Summary judgment under Fed.R.Civ.P. 56(c) is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  If the moving party meets the initial burden of showing that there is no genuine issue of material fact, the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial.  *Id.* at 322-24, 106 S.Ct. at 2552-53;  Fed.R.Civ.P.

3

56(e).

A defendant who moves for summary judgment may rely on the absence of evidence to support an essential element of the plaintiff's case. *International Ass'n of Machinists & Aerospace Workers, Lodge No. 2504 v. Intercontinental Mfg. Co.,* 812 F.2d 219, 222 (5th Cir.1987). There must be evidence giving rise to reasonable inferences that support the non-moving party's position. *St. Amant v. Benoit,* 806 F.2d 1294, 1297 (5th Cir.1987).

DISCUSSION

Engstrom contends that the district court erred in dismissing his claims under the Soldiers' and Sailors' Civil Relief Act 50 U.S.C.App. §§ 501-593. ("Relief Act"). The purpose of the Relief Act is to suspend enforcement of civil liabilities of persons in the military service of the United States in order to enable such persons to devote their entire energy to the defense needs of the Nation. 50 U.S.C.App. § 510. The Relief Act applies to servicemen and reservists who are ordered to report for military service. *See* 50 U.S.C.App. §§ 511 & 516. The provision of the Relief Act are to be liberally construed. *Koons v. Nelson,* 113 Colo. 574, 160 P.2d 367, 372 (1945). Although the act is to be liberally construed it is not to be used as a sword against persons with legitimate claims. *Slove v. Strohm,* 94 Ill.App.2d 129, 236 N.E.2d 326, 328 (1968). The Relief Act is to be administered as an instrument to accomplish substantial justice which requires an equitable consideration of the rights of parties to the end that their respective interests may be properly conserved. *New York Life Ins.*

4

*Co. v. Litke,* 181 Misc. 32, 45 N.Y.S.2d 576, 582 (1943)

Amongst the Relief Act's many provisions is a prohibition against the sale or foreclosure of a serviceman's mortgaged property in 50 U.S.C.App. § 532.  The pertinent provisions of 50 U.S.C.App. § 532 are as follows:

> (3) *No sale, foreclosure, or seizure of property for nonpayment of any sum due* under any such obligation, or for any other breach of the terms thereof ... shall be valid if made during the period of military service or within three months thereafter.... [emphasis ours].

This provision applies to obligations incurred before or during military service.  50 U.S.C.App. § 532(2).  A serviceman can give a written release to allow for the sale or foreclosure of his property.  *See* 50 U.S.C.App. §§ 517 & 532(3).  The Relief Act also allows agents authorized under state law to dispose of the serviceman's property.  *See Pailet v. Ald, Inc.,* 194 So.2d 420 (La.Ct.App.1967).

Engstrom argues that First National sold his farm equipment in violation of the Relief Act.  As a reservist called to active duty, Engstrom was undoubtedly a member of the class protected by the Relief Act.  His obligation was incurred before he was called up to active service and thus he meets the qualifying provision of 50 U.S.C.App. § 532(2).  The only question remaining is whether the bank violated the act by selling the equipment.

The summary judgment evidence submitted by the Bank and Engstrom is as follows:  In the Fall of 1990, before John Engstrom was called up to military service, the bank had written in its loan reports that Engstrom's loans had to be moved or be liquidated.  In

5

his deposition, John Engstrom testified that before he left he arranged with Clipson and Wegenhoft to sell some of his equipment at private sale to pay some of the debt. He also testified that he told Clipson and Wegenhoft that his property was not to be sold at auction.

Clipson testified, in deposition, that he was the person who gathered Engstrom's equipment together and sold it at the auction. He also testified that John Engstrom had given him permission to sell the equipment when Engstrom had temporarily returned from the service one weekend. Clipson also stated that he obtained the permission of the bank to sell the property. In his deposition, Wegenhoft testified that he had not directed the equipment to be sold. He stated that it was his understanding that Engstrom had given his permission to Clipson to sell the equipment at auction.

In the bank's loan reports is this November 30, 1992 statement about the status of the loan:

> ACTION PLAN: Have arranged for Jim Clipson, Jr. to sell all equipment. Rent house is for sale. Will suggest lowering price close to values used here.

> STATUS: Have an appraisal of equipment from local dealer and proceeding to sell equipment. Anything not sold will go into bank's equipment auction in late January.

The bank arranged the auction, signed off on some of the bills of sale, and signed John Engstrom's name to the checks in order to apply the auction proceeds to the debt.

The summary judgment evidence submitted to the district court demonstrates that it was Clipson, not First National, that placed Engstrom's equipment in auction. Clipson gathered the equipment

6

together, took it to the auction, and sold it.  Clipson testified that he thought that he had Engstrom's permission to sell the equipment at auction:

Q Was it Travis [Wegenhoft] that asked you to go ahead and bring the equipment [to auction].

A No, John [Engstrom] asked me to do it.

First National also thought that Engstrom had given Clipson permission to sell the equipment at auction:

Q So, the bank didn't sell it at the auction sale.

A No.

Q Who did?

A John Engstrom instructed Jim Clipson to deliver it to the sale. Well, that's my understanding;  but from here it sounded like John Engstrom's folks were to deliver it.

The testimony is uncontradicted that Clipson sold the equipment with, what First National and Clipson thought was, Engstrom's permission.

Although Engstrom produced evidence that First National acquiesced in the sale of the equipment and that it organized the auction, First National is not liable under the Relief Act for selling the equipment for several reasons.  First, as we have stated above, First National thought that Clipson had Engstrom's permission to sell the equipment.  *See Pailet,* 194 So.2d at 423 (holding that duly authorized representatives may sell a serviceman's property).  Second, Engstrom submitted no summary judgment evidence inferring that Clipson was an agent of the bank, which could impute Clipson's action to the bank, when the equipment was sold.  Third, we have found no authority indicating that First

7

National's acquiescence to Clipson's sale of the equipment or that First National's organization of the auction where the equipment was sold makes it liable under the Relief Act.[1]

In his brief, Engstrom strenuously argues that Clipson did not have permission to sell his equipment. He points to his own deposition and affidavits in which he unequivocally denies giving Clipson permission to sell the equipment. However, for summary judgement purposes, assuming arguendo that Clipson did not have the authority to sell the equipment at auction, such lack of authority would only give Engstrom a potential action against Clipson who is not a party to the lawsuit. As noted by the District Court, Engstrom's proof fails to establish liability of First National under the Relief Act.

CROSS-APPEAL

First National contends that the district court erred in allowing Engstrom to amend his complaint. The amendments added claims under the Texas Deceptive Trade Practices Act, the Texas Uniform Commercial Code, and a claim for negligence. First National argues that because the additional causes of action were dependent on the allegations that the bank sold Engstrom's equipment, it was futile for the district court to allow the amendments.

The Federal Rules of Civil Procedure provide that, after an

_____

[1]Engstrom argues that First National is liable under 50 U.S.C.App. § 532(4) of the Relief Act for "mak[ing or caus[ing]" a sale to be made. This section of the Relief Act is a criminal statute and is not apropos to this discussion.

answer has been filed, "a party may amend the party's pleading only by leave of court" and that "leave to amend shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). In the absence of ... undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be "freely given." *Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). This Court reviews a district court's denial of leave to amend a complaint for abuse of discretion. *Avatar Exploration Inc. v. Chevron, U.S.A., Inc.,* 933 F.2d 314, 320 (5th Cir.1991).

In the amendments, Engstrom states that First National could be liable under the Texas Deceptive Trade Practices Act. This Act defines an unconscionable act as any act which takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree. Tex.Bus. & Com. § 17.45. Engstrom states that even if it was true that First National did not sell his equipment in auction, First National still knew before the sale that (1) the equipment was going to be sold and (2) the sale was contrary to his wishes and instructions.

In brief, Engstrom argues that First National could have committed a unconscionable act in taking advantage of his lack of knowledge, ability, experience, or capacity when it did not prevent the sale even though it had every right and opportunity to do so. The district court considered these claims under the factors enunciated in *Foman* and allowed the amendments. After thoroughly examining the record and the applicable law, we find no abuse of

the district court's discretion in granting the motion to amend. We therefore find this contention to be without merit.

First National also contends that the district court erred in remanding the remaining state law claims to state court.[2] The general rule is that state claims should be dismissed once the basis for federal jurisdiction has been dismissed. *Parker & Parsley Petroleum v. Dresser Industries Inc.,* 972 F.2d 580, 585 (5th Cir.1992). The factors to be addressed in determining whether to retain jurisdiction once the federal claims have been disposed of are judicial economy, convenience, fairness, federalism, and comity. *See, e.g., Newport Ltd. v. Sears, Roebuck & Co.,* 941 F.2d 302, 307 (5th Cir.1991), *cert. denied,* 502 U.S. 1096, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992); *Parker & Parsley Petroleum v. Dresser Industries Inc.,* 972 F.2d 580, 585 (5th Cir.1992).

Although this case has been pending for three years and the parties were in the midst of trial preparation, the amount of judicial resources that were invested into this case, as noted by the district court, has been remarkably small. Since there has been no substantial commitment of judicial resources and the remaining claims can be routinely resolved, the district court did not abuse its discretion by remanding the remaining state claims to state court. *See Parker & Parsley,* 972 F.2d at 587.

---

[2]We note that we have jurisdiction over the district court's decision to remand this case. In a case where the district court has the discretion over whether to remand a case, such as the instant case, we have the power to review the district court's decision on appeal. *Hook v. Morrison Milling Co.,* 38 F.3d 776, 780 (5th Cir.1994).

10

CONCLUSION

Because there is clear evidence that First National Bank of Eagle Lake did not seize and sell Engstrom's property, the judgment of the district court dismissing Engstrom's Soldiers' and Sailors' Relief Act claims is AFFIRMED. The judgment of the district court granting Engstrom's motion to amend complaint is AFFIRMED. The judgment of the district court remanding this case to state court is also AFFIRMED.