**HOUSTON BALLOONS &
PROMOTIONS, LLC,
Plaintiff,**

v.

**The CITY OF HOUSTON, Defendants.**

**Civil Action No. H–06–3961.**

United States District Court,
S.D. Texas,
Houston Division.

Dec. 9, 2008.

Paul S. Francis, Amelia Gayle Berg, James E. Phillips, Baker Hostetler LLP, Houston, TX, for Plaintiffs.

John M. Helms, Legal Department, Houston, TX, for Defendant.

### ORDER

VANESSA D. GILMORE, District Judge.

Pending before the Court is Defendant City of Houston's Motion for Partial Summary Judgment. (Instrument No. 26).

### I.

Plaintiffs Houston Balloons & Promotions, LLC and Purtee & Associates, Ltd. (collectively, "Plaintiffs") brings the instant suit for declaratory judgment, injunctive relief and economic damages against Defendant City of Houston, Texas ("Houston" or the "City") for violations of their Constitutionally protected rights of free expression and equal protection. (Instrument Nos. 1, 13).

Plaintiffs, owned and managed by Jim Purtee ("Purtee"), together operate a business known as Houston Balloons & Promotions ("Houston Balloons"). Houston Balloons leases inflatable balloons to customers in the Houston area for the purpose of advertising and promoting those customers' businesses. (Instrument No. 26–2, at 3). Plaintiffs allege that the City's regulation of advertising and commercial speech on attention-getting devices, including inflatable balloons, unlawfully infringes Plaintiffs' freedom of expression, due process and equal protection under the First, Fifth and Fourteenth Amendments of the U.S. Constitution. (Instrument No. 13, at 1).

### II.

The City has been regulating signs in the Houston area since it enacted the Sign Code in 1980. (Id., at 4). Section 4602 of the Sign Code defines a "sign" as "any outdoor display, design, pictorial or other representation that shall be so constructed, placed, attached, painted, erected, fastened or manufactured in any manner whatsoever so that the same shall be used for advertising." (Id.). Section 4604 of the Sign Code establishes a Sign Administration Division ("Sign Administration"), which enforces the Sign Code and all other sign-related City laws. (Id.). The Sign Administration issues permits for signs, conducts inspections and enforces compliance with the Sign Code. (Id.). To that end, Sign Administration inspectors investigate possible violations of the Sign Code and related City laws, and issue notices of violations ("NOVs"), which require the removal of signs deemed to violate City laws.

The Sign Administration also issues fines for noncompliance with NOVs. (*Id.*). Susan Luycx ("Luycx") has been, at all times relevant to the instant lawsuit, the senior City official in the Sign Administration and responsible for day-to-day enforcement. (Instrument No. 30–2, at 5–7).

In 1993, the City enacted Section 28–37 of the City code, a section related to but not included in the Sign Code. Section 28–37 regulates "attention-getting devices" ("AGDs"), defined as:

> [D]evices erected, placed or maintained so as to attract attention to any commercial business, or any goods, products or services available on the premises of the commercial business, which shall include but, not be limited to, the following: banners; cut-out figures; discs; festooning; inflatable objects, including balloons; non-governmental flags; pennants; propellers; steam- or smoke-producing devices; streamers; whirligigs; blinking, rotating, moving, chasing, flashing, glaring, strobe, scintillating, search, flood or spot lights; or similar devices; any of which are located or employed in connection with the conduct of a commercial business.

Houston, Tex.Code, ch. 28, art. I, § 28–37 (2005) (hereinafter "Section 28–37"); (Instrument No. 26–2, at 5). The preamble to Section 28–37 notes that AGDs "pose substantial problems of traffic safety and visual aesthetics similar to and, in many instances, more serious than conventional commercial advertising signs," and justifies regulation of AGDs by finding that the proliferation of AGDs within the City "adversely affects the aesthetic environment, safety, and quality of life" of the City. (*Id.*).

Inflatable advertising devices ("inflatables"), including the type leased by Houston Balloons, are AGDs covered by Section 28–37. (*Id.*). Pursuant to Section 28–37, all AGDs within the City must be regis-

tered. An entity's failure to register an AGD is a misdemeanor punishable by a minimum fine of $150.00, with each unregistered day constituting a separate violation. *Id.* at § 28–37(f); (Instrument No. 26–2, at 6). In addition, AGDs containing certain types of written messages are considered "signs" and are subject to the Sign Code's provisions. Section 28–37(a) states:

> [A]ny device otherwise defined as an attention-getting device which contains or displays any written message, business name, pictorial representation, logo, corporate symbol, silhouette or other visual representation representing or advertising a particular business, good, service, or merchandise sold or available for sale on the premises where the device is erected, displayed or maintained shall be a "sign" as that term is defined in Section 4602 of the Houston Sign Code and shall be subject to the provisions of that Code, rather than this section.

Houston, Tex.Code, ch. 28, art. I, § 28–37(a) (2005); (Instrument No. 26–2, at 5–6).

The entity displaying an AGD bears the responsibility to register it with the Sign Administration. Houston, Tex.Code, ch. 28, art. I, § 28–37(e) (2005); (Instrument No. 26–2, at 7). Here, Houston Balloons would occasionally register customers' AGDs on their behalf, although they were not required to do so. (Instrument No. 26–2, at 6–7). To the extent that the City issued NOVs and tickets for such AGDs' violations of Section 28–37, it issued them to the customers of Houston Balloons, not to Houston Balloons itself. (*Id.*). Houston Balloons has never used any of AGDs to advertise themselves. (*Id.*, at 13).

Up to the time of Plaintiff's suit, the City characterized messages "identifying or advertising a particular business, good, service, or merchandise sold or available

for sale on the premises" as *non-generic,* and all other messages as *generic.* (*Id.,* at 6–7). For example, "Sale at Gramercy Furniture" and "Grand Opening Ming–Yang's Chinese Bistro" would be non-generic messages, but "Sale" and "Grand Opening" would be generic messages. (*Id.*). Under this rubric, the City determined that AGDs with non-generic messages were signs, and therefore subject to the Sign Code and the Sign Administration's enforcement of the regulations. All other AGDs, including AGDs with generic messages or no message at all, were not considered signs and therefore not subject to the Sign Code. (*Id.,* at 6–8).

Pursuant to this regulatory scheme, the City's practice was to effectively ban all AGDs with non-generic messages: the City would not issue a sign permit for such AGDs under the Sign Code, nor would it allow registration under Section 28–37. (*Id.,* at 6–7). Up to the time of Plaintiffs suit, the Sign Administration's policy was to issue NOVs and tickets for AGDs with non-generic messages. (*Id.,* at 7). An otherwise identical AGD bearing a generic message could be registered pursuant to Section 28–37 and displayed legally. (*Id.*).

Section 28–37's stated purpose in the regulation of AGDs is to prevent adverse affects on the "aesthetic environment, safety, and quality of life" of the City. According to Luycx, the senior City official of the Sign Administration, Section 28–37 is an "integral part of a larger scope of regulation by Houston that seeks to minimize visual clutter." (*Id.,* at 18). However, the City has not produced evidence in this case demonstrating that AGDs constitute a health or safety hazard. (*Id.,* at 8). Nor has the City set forth criteria designating which AGD types or designs it considers aesthetically acceptable (or unacceptable). (*Id.*). The City has never issued an NOV or a ticket, or denied registration of an AGD, based on an AGD's threat to health or safety, or an AGD being aesthetically unacceptable. (*Id.*). To the extent that the City has issued NOVs and tickets to entities displaying AGDs, it has done so pursuant to Section 28–37 for failure to register an AGD, or for an AGD bearing a non-generic message. (*Id.*).

According to Purtee, the City's regulation of AGDs has caused numerous Houston Balloons customers to cancel their leases. (Instrument No. 31, at 2–3). Purtee adds that whenever Houston Balloons or their customers erected AGDs with non-generic messages, Houston Balloons' customers received NOVs and tickets. (*Id.,* at 2–3). He maintains that the inflatables and other AGDs are a cost-effective way to advertise, with no comparably priced alternatives. (*Id.*). Purtee states he is unaware of any studies or reports addressing the safety hazards posed by AGDs. (*Id.*).

Since the Plaintiffs filed this lawsuit on December 13, 2006, the City has suspended enforcement of Section 28–37 and all related Sign Code provisions. (Instrument No. 26–2, at 8; Instrument No. 31, at 2–3). According to Purtee, many inflatables with written messages, both generic and non-generic, are currently displayed all over Houston, many by Houston Balloons' customers. (Instrument No. 31, at 2). Purtee also states that since filing the instant suit, no Houston Balloons customer has received an NOV or ticket from the City. (*Id.,* at 3).

Andy Icken ("Icken") is the Deputy Director of the City's Planning and Development Services Division ("Icken") and the City official in charge of enforcing Section 28–37. During the pendency of this litigation, Icken promulgated a new interpretation of Section 28–37 as of July 3, 2008: AGDs bearing any and all "written messages," "graphical representations," or "commercial advertisement,"

whether *generic or non-generic,* will be disallowed. (Instrument No. 26–2, at 19–22). This interpretation allows AGDs, including inflatables, without any message or representation, and alternate forms of outdoor advertising such as wall signs, window signs, and freestanding signs. (*Id.*). Neither party has introduced evidence regarding the current enforcement of Section 28–37.

On November 28, 2008, Defendant City adopted Ordinance No. 2008–992, which will take effect on January 1, 2010 and will ban *all* AGDs—whether the AGD bears a generic message, a non-generic message, or no message at all. (Instrument No. 48, at 6–8). Ordinance No. 2008–992 is not the subject of this litigation.

### III.

Plaintiffs filed the instant suit on December 13, 2006, seeking a declaratory judgment, injunctive relief and economic damages against Defendant City of Houston, Texas ("Houston" or the "City"). (Instrument Nos. 1, 13). Plaintiff allege that the City's regulation of inflatable balloons bearing advertising and commercial speech unlawfully infringes Plaintiffs' Constitutionally protected freedom of expression and equal protection under the First, Fifth and Fourteenth Amendments of the U.S. Constitution. (Instrument No. 13, at 1). Specifically, Plaintiffs allege that the City's regulation of inflatable balloons bearing non-generic messages is a content-based regulation of expression and therefore is unconstitutional under the First Amendment. (*Id.,* at 8). Plaintiffs further allege that the regulation's distinction between inflatable balloons bearing non-generic messages and inflatable balloons bearing generic messages violates the Fourteenth Amendment because it is an arbitrary classification. (*Id.,* at 12–13). Finally, Plaintiffs allege that the City's regulation of AGDs is "vague, confusing, ambiguous, and inconsistent," and therefore violative of Plaintiffs' due process rights under the Fifth Amendment. (*Id.,* at 14).

Defendant City answered on January 5, 2007, denying that the City's regulation of AGDs is unconstitutional. (Instrument Nos. 5, 17). Defendant also asserted the affirmative defenses of failure to state a claim on which relief can be granted, official immunity, qualified immunity, immunity under Texas law, sovereign immunity, governmental immunity, and legislative immunity. (Instrument No. 17, at 6–7). Finally, Defendant asserted the defense of statute of limitations. (*Id.,* at 7).

Defendant City filed a motion for partial summary judgment on Plaintiffs' First Amendment claim on July 10, 2008. (Instrument No. 26). The City first argues that the Plaintiffs lack standing to bring the instant claim because the regulation at issue does not directly affect Plaintiff's activities and Plaintiffs are only asserting the free speech rights of their third party customers. (*Id.,* at 10–12). Second, the City contends that its interpretation of Section 28–37 is a content-neutral "time, place, or manner" restriction on speech, and is therefore legally justified. (*Id.,* at 17–19). Finally, the City alleges that Plaintiffs cannot collect any damages as a matter of law, because (1) they cannot collect damages for the restriction of other people's speech; and (2) the First Amendment does not grant a right to profit. (*Id.,* at 19–21).

Plaintiffs responded on August 1, 2008. (Instrument No. 30). Plaintiffs first argue that they have standing to bring a suit on their own behalf because the City's enforcement practices have created a real controversy between Plaintiffs and the City. (*Id.,* at 17–19). Plaintiffs add that they also have standing to assert the rights of their customers pursuant to the overbreadth doctrine. (*Id.,* at 19). Second, Plaintiffs argue that the City has not

established that its new interpretation of Section 28–37 is lawful, because it neither eliminated the old law nor cured the illegality of the City's regulatory scheme for signs. (*Id.*, at 23). Specifically, Plaintiffs contend that the City has failed to show that the interpretation passes the legal test for regulations of commercial speech because the new regulation (1) does not materially advance the stated governmental interests of safety and aesthetics; and (2) is more extensive than necessary. (*Id.*, at 23–28). Finally, Plaintiffs assert that because they have standing to sue on their own behalf, they are entitled to damages. (*Id.*, at 30–31).

The City filed a reply on August 14, 2008, arguing that Plaintiffs do not have standing to bring this case because Plaintiffs are not directly subject to Section 28–37. (Instrument No. 33, at 7–8). The City reiterates their position that Plaintiffs cannot recover economic damages, because Plaintiffs' constitutional rights have not been violated. (*Id.*, at 3–4). The City asserts that even assuming that Section 28–37 is unconstitutional, it only applies to Plaintiffs' customers, and not to Plaintiffs. (*Id.*).

On August 22, 2008, Plaintiffs filed a sur-reply. (Instrument No. 35). Plaintiffs argue that they have standing because they are suing to pursue their own rights and interests, as they have suffered direct harm by the City's enforcement practices. Plaintiffs also state that the City mischaracterized Plaintiffs' argument by suggesting that Plaintiffs' constitutional challenge to Section 28–37 is limited to a facial First–Amendment challenge, as opposed to Plaintiffs' actual challenge to the City's regulatory scheme, including Section 28–37, the City's Sign Code and the City's enforcement of these provisions, under the First, Fifth and Fourteenth Amendments. (*Id.*, at 1–2). Finally, Plaintiffs reiterate that they are entitled to economic damages because they are suing to pursue their own rights and interests.

## IV.

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. A fact is "material" if its resolution in favor of one party might affect the outcome of the suit under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also United States v. Arron*, 954 F.2d 249, 251 (5th Cir.1992). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. If the evidence rebutting the motion for summary judgment is only colorable or is not significantly probative, summary judgment should be granted. *See id.* at 2511; *see also Thomas v. Barton Lodge II, Ltd.*, 174 F.3d 636, 644 (5th Cir.1999). The summary judgment procedure, therefore, enables a party "who believes there is no genuine issue as to a specific fact essential to the other side's case to demand at least one sworn averment of that [specific] fact before the lengthy process continues." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 886–88, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990).

Under Rule 56(c), the moving party bears the initial burden of informing the district court of the basis for its belief that there is an absence of a genuine issue for trial and of identifying those portions of the record that demonstrate such absence. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *see also Burge v. Parish of St. Tammany*, 187 F.3d 452, 464 (5th Cir.1999).

Where the moving party has met its Rule 56(c) burden, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward 'with specific facts showing that there is a *genuine issue for trial.*'" *Matsushita,* 475 U.S. at 586–87, 106 S.Ct. 1348 (*quoting* Fed.R.Civ.P. 56(e)) (emphasis in original). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Engstrom v. First Nat'l Bank,* 47 F.3d 1459, 1462 (5th Cir. 1995). To sustain the burden, the nonmoving party must produce evidence admissible at trial. *See Anderson,* 477 U.S. at 242, 106 S.Ct. 2505; *see also Thomas v. Price,* 975 F.2d 231, 235 (5th Cir.1992) (stating that "[t]o avoid a summary judgment, the nonmoving party must adduce admissible evidence which creates a fact issue.").

The Court reviews the facts in the light most favorable to the nonmovant and draws all reasonable inferences in favor of the nonmovant. *See Brown v. Bunge Corp.,* 207 F.3d 776, 781 (5th Cir.2000). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505.

## V.

### A.

▮ The doctrine of standing determines "whether a litigant is entitled to have a federal court resolve his grievance." *Kowalski v. Tesmer,* 543 U.S. 125, 128, 125 S.Ct. 564, 160 L.Ed.2d 519 (2004). The inquiry into standing contains two distinct strands, which are analyzed as dual threshold matters:

(1) Article III standing, which enforces the Constitution's case-or-controversy requirement; and

(2) prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction.

*Id.*; *Elk Grove Unified School Dist. v. Newdow,* 542 U.S. 1, 11–12, 124 S.Ct. 2301, 159 L.Ed.2d 98 (2004) (internal citations omitted).

### 1.

Article III, § 2 of the United States Constitution extends the judicial power of the United States solely to cases and controversies. *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). A party's standing to sue under Article III is "part of the common understanding of what it takes to make a justiciable case." *Id.*

▮ The "irreducible constitutional minimum" of Article III standing contains three elements: (1) the plaintiff must have suffered an actual "injury in fact"; (2) there must be a causal connection between the injury and the complained-of conduct; and (3) it must be likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560–61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The party invoking federal jurisdiction has the burden of establishing these elements. *Id.* (*citing FW/PBS, Inc. v. Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)).

▮ Here, both Plaintiffs and Defendant agree, and the evidence demonstrates, that Plaintiffs have Article III standing to bring the instant claims. (See Instrument No. 26, at 10). First, the undisputed facts show Plaintiffs have suffered "injury in fact" as a result of the City's regulation of AGDs, including inflatable balloons. Pursuant to the City's regulations, the City rejected Houston Balloons' applications for sign permits, filed on behalf of Houston Balloons' customers,

where the inflatable balloons bore non-generic messages. (Instrument No. 31, at 2–4). The City also imposed fines on Houston Balloons' customers who rented and displayed inflatable balloons with non-generic messages. (*Id.*). Because Houston Balloons' customers were unable to obtain permits and registration for inflatable balloons bearing advertising or commercial speech, and because these customers feared enforcement in the form of fines, they cancelled their orders and contracts with Houston Balloons and halted leasing inflatable balloons. (*Id.*). As a result, the demand for Houston Balloons' products has declined and Houston Balloons has suffered economic injury. (*Id.*). Purtee stated that Houston Balloons lost business and suffered substantial economic losses during the four years prior to the filing of the instant suit. (*Id.*). These losses constitute an injury in fact. *Craig v. Boren*, 429 U.S. 190, 194, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (direct economic injuries meet Article III's "injury in fact" requirement). Additionally, the losses Plaintiffs suffered are a direct result of the City's regulation of AGDs bearing commercial writing or imagery. Therefore, Plaintiffs meet the first and second elements of Article III standing.

Further, if this Court ruled in Houston Balloons' favor, Houston Balloons could be compensated for the past financial losses it suffered as a result of the City's regulation of AGDs in the form of compensatory damages. Houston Balloons would also be able to resume leasing inflatable balloons with non-generic messages to its customers, because its customers would be able to obtain permits and registration for the inflatable balloons and would not face fines. Therefore, an outcome in Plaintiffs' favor would redress past, present and future injuries.

Accordingly, there is no genuine issue of material fact as to whether the elements of Article III standing have been met. *Lujan*, 504 U.S. at 560–61, 112 S.Ct. 2130. The Court finds that Plaintiffs have established Article III standing.

**2.**

Even when a plaintiff has met the barrier of Article III standing, prudential limitations to standing may apply. According to the principal of prudential standing, a plaintiff "must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Ward v. Santa Fe Indep. Sch. Dist.*, 393 F.3d 599, 606 (5th Cir.2004) (*citing Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975)). Further, prudential standing demands that a "plaintiff's complaint falls within the zone of interests protected by the law involved." *Elk Grove Unified*, 542 U.S. at 12, 124 S.Ct. 2301 (*citing Allen v. Wright*, 468 U.S. 737, 751, 104 S.Ct. 3315, 82 L.Ed.2d 556 (1984)). The inquiry is "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth*, 422 U.S. at 500, 95 S.Ct. 2197 (plaintiffs bringing suit on behalf of third parties lacked prudential standing because plaintiffs were not subject to the ordinance at issue).

Here, Plaintiffs are subject to prudential limitations and do not have standing in their own right because the Sign Code, Section 28–37, and the related regulatory scheme do not directly regulate Plaintiffs' activities and do not grant Plaintiffs a right of action. Moreover, Plaintiffs are not asserting their own legal rights and interests in this case, but rather are asserting the constitutional interests of their third party clients.

Plaintiffs are in the business of leasing balloons, a type of inflatable AGD. (Instrument 26–2, at 1). Although Plaintiffs have

registered their leased balloons with the Sign Administration on behalf of their clients, Plaintiffs are not required to do so under the Sign Code or Section 28–37. (Instrument No. 26–2, at 5). Rather, Plaintiffs' customers, as the parties displaying messages on AGDs, are required to register the AGDs with the Sign Administration. (*Id.*) Where inflatable balloons infringing Section 28–37 are displayed, Plaintiff's customers, not Plaintiffs, are subject to enforcement actions. (Instrument No. 26–2, at 7; 12). Houston Balloons has never received a citation or warning by the Sign Administration. (Instrument No. 26–2, Deposition of John Helms, at 12). Houston Balloons does not employ, nor ever has employed, AGDs for advertising purposes itself. (Instrument No. 26–2, Deposition of John Helms, at 13). Plaintiffs themselves are not subject to the regulatory provisions of the Sign Code or Section 28–37.

■ Admittedly, Plaintiffs have a financial interest in the City's regulation of AGDs, but a financial interest does not equate a legal interest or a Constitutional injury. See *The Pitt News v. Fisher,* 215 F.3d 354, 366 (3d Cir.2000) ("The fact that *The Pitt News* has demonstrated a connection between the enforcement of Act 199 and the reduction in its advertising revenues … does not mean that one of its constitutionally protected interests has been injured. This amounts to nothing more than an incidental economic effect of a regulation aimed at closely regulated third parties.") Plaintiffs can continue to rent inflatable balloons without any legal implication under the Sign Code or Section 28–37. Plaintiffs' clients can continue to rent and display inflatable balloons from

Plaintiffs provided that the balloon does not bear advertising content (or, under the former interpretation of Section 28–37, non-generic messages), which is entirely up to the discretion of Plaintiffs' clients.[1] Thus, the regulations of AGDs implicate the legal rights and interests of third parties wishing to display advertising on AGDs. It is Plaintiffs' clients, not Plaintiffs, whose freedom of expression is being governed by the City's regulatory scheme with respect to AGDs.

Plaintiffs cite *K.H. Outdoor, LLC v. City of Trussville* to support the assertion that they have standing to bring the instant claim in their own right. 458 F.3d 1261 (11th Cir.2006); (Instrument No. 30, at 21). However, Plaintiffs' reliance on *K.H. Outdoor* is misguided. The plaintiff in *K.H. Outdoor* was in the business of erecting and operating billboards, and objected to a city ordinance that regulated the location, size, lighting, setback and content of billboards. *Id.* at 1264–65. The Plaintiff in *K.H. Outdoor* had been denied applications for permits to erect eleven billboards because the billboards violated size and location requirements. *Id.* at 1265. The Eleventh Circuit found that the plaintiff had standing to bring suit, in his own right, against the portion of the ordinance that impacted *location and size* of billboards—a restriction that directly impacted and governed plaintiff's activities. *Id.* at 1267. The plaintiff in *K.H. Outdoor* only had standing in his own right to challenge the portion of the ordinance that directly regulated his own activities.

Here, Plaintiffs conflate the standing granted to the plaintiff in *K.H. Outdoor* in his own right with the standing granted to

---

**1.** During the pendency of this litigation, Defendant City promulgated City of Houston Ordinance No. 2008–992, which will take effect on January 1, 2010 and will ban all AGDs. (Instrument No. 48, at 6–8). Under Ordinance No. 2008–992, Plaintiffs will be unable to lease inflatable balloons and Plaintiffs' clients will be unable to display inflatable balloons. (*Id.*).

him under the overbreadth doctrine (discussed below in further detail). Only after the court established that the plaintiff had standing in his own right to challenge those relevant portions of the ordinance that regulated his own activities related to the placement of the billboards did the court allow plaintiff to bring a facial overbreadth challenge against the provisions that regulated *content*, based on its impact on third parties wishing to display messages on the billboards. *Id.* The plaintiff did not have standing in his own right to challenge the portions of the ordinance regulating content.

Unlike the Plaintiffs *K.H. Outdoor*, Plaintiffs herein wholly lack standing in their own right because the City's regulations at issue do not directly control Plaintiffs' activities. The Sign Code, Section 28–37, and the related regulatory scheme exclusively regulate *content* of AGDs; they do not regulate the size, placement or location of AGDs, as the ordinance in *K.H. Outdoor* did for billboards. In fact, the City's regulations of AGDs do not directly govern Plaintiffs' activities at all because Plaintiffs can continue to rent and display inflatable balloons without any legal implication under the regulations. Therefore, *K.H. Outdoor* does not support Plaintiffs' assertion that they have standing to bring the instant claim in their own right.

Plaintiffs also cite to *RTM Media, LLC v. City of Houston* in support of the assertion that they have standing to sue on their own behalf because a "real and substantial controversy exists between [Plaintiffs] and the City." (Instrument No. 30, at 18–19). Plaintiffs' reliance on *RTM Media* is inapposite, as the plaintiffs in *RTM Media* were directly subject to the ordinance in question and directly experienced enforcement for violating the ordinance. *RTM Media, LLC v. City of Houston*, 518 F.Supp.2d 866, 872 (S.D.Tex.2007) ("Plaintiff has also been cited for violations of the

ordinance approximately two hundred times in the last three years, and the City instituted a civil suit in July 2007 against it and threatens criminal prosecution."). Here, as discussed above, Plaintiffs are not directly subject to the Sign Code, Section 28–37, or the Sign Administration's enforcement of the related regulatory scheme. *See, cf. Houston Chronicle Publ'g Co. v. City of League City, Tex.*, 488 F.3d 613, 618–19 (5th Cir.2007) (where vendors of the Houston Chronicle and Daily News received citations, and both newspapers faced imminent prosecution by the City, the newspapers had standing to bring a claim against the relevant ordinance in their own right); *Craig*, 429 U.S. at 194, 97 S.Ct. 451 (vendor of alcoholic beverages has standing to contest Oklahoma's age limitations on alcohol consumption because the "legal duties created by the statutory sections under challenge are addressed directly to vendors such as appellant" and vendor would suffer "sanctions and perhaps loss of license" if she disobeyed the statutory command).

Therefore, in analyzing Plaintiffs' standing under the second prong, it is clear that Plaintiffs' claims in this suit as they now stand must be subject to prudential limitations on standing. Accordingly, the Court finds that Plaintiffs cannot bring a First Amendment claim in their own right on the City's current regulations.

The above analysis relates only to the City's regulation of AGDs that are currently at issue before the Court. Under the City's Ordinance No. 2008–992, which was promulgated on November 12, 2008 and will take effect on January 1, 2010, all AGDs will be prohibited—regardless of whether the AGD bears a generic message, a non-generic message or no message. (Instrument No. 46, at 6–8). Ordinance No. 2008–992 will entirely enjoin Plaintiffs from engaging in their business

of renting inflatable balloons to customers, and will therefore directly impact and control Plaintiffs' activities. (*Id.*). If Plaintiffs were to bring a claim involving Ordinance 2008–992, Plaintiffs would be asserting their own legal rights and interests and would not be subject to the prudential limitations on standing. However, this issue is not now before the Court.

### 3.

■■■■ The rule that a party must assert his or her own legal rights and interests is not absolute. The U.S. Supreme Court has held that "where competing considerations outweigh any prudential rationale against third-party standing," the prudential limitations on standing may be relaxed. *Sec'y of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 956, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). Where a plaintiff's challenge to a statute is based on the First Amendment, an important competing consideration is the "danger of chilling free speech." *Id.* at 956–57, 104 S.Ct. 2839. In cases where an overbroad statute may cause third parties to refrain from constitutionally protected speech or expression, a plaintiff may "assert the rights of third parties, without regard to the ability of the other to assert his own claim" even though the plaintiff's own rights of free expression are not violated. *Id.* at 956–57, 104 S.Ct. 2839 (*citing Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973)). The overbreadth doctrine does not relieve Plaintiffs from establishing Article III standing. Rather, the doctrine allows Plaintiffs to bring a facial challenge to the provision of the law that caused their injury-in-fact. *Munson*, 467 U.S. at 958, 104 S.Ct. 2839. "Facial challenges to overly broad statutes are allowed not primarily for the benefit of the litigant, but for the benefit of society—to prevent the statute from chilling the First Amendment rights of other parties not before the court." *Id.*; *K.H. Outdoor*, 458 F.3d at 1267.

■■■■ In order to obtain standing under the overbreadth doctrine, Plaintiffs must demonstrate an ability to "satisfactorily frame the issues in the case." *Clark v. City of Lakewood*, 259 F.3d 996, 1011 (9th Cir.2001) (*citing Munson*, 467 U.S. at 950, 104 S.Ct. 2839). Here, the activity sought to be protected—displaying written messages or advertisement on inflatable AGDs—is central to the business relationship between Plaintiffs and their clients. Plaintiffs' interests in challenging the application and execution of Section 28–37 are consistent with the interests of their third-party clients. Thus, Plaintiffs may serve as effective a proponent of free expression as their clients. See *Singleton v. Wulff*, 428 U.S. 106, 115, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976) (the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter).

■■■■ Additionally, the alleged overbreadth must be "substantial." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 255, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002); *Young v. Am. Mini Theatres, Inc.*, 427 U.S. 50, 60, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976). The City argues that the overbreadth doctrine cannot grant Plaintiffs standing because the challenged law's application to protected speech is not "substantial" in relation to the "scope of the law's plainly legitimate applications." (Instrument No. 26, at 7). "Even if there are marginal applications in which a statute would infringe on First Amendment free speech values, facial invalidation because of overbreadth is inappropriate if the remainder of the statute covers easily identifiable and constitutionally prescribable conduct." *Smith–Caronia v. U.S.*, 714 A.2d 764, 767 (D.C.1998) (*quoting Parker v. Levy*, 417 U.S. 733, 760, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)).

Here, there is evidence that the City's regulation of AGDs bearing advertising has caused a substantial impact on protected speech. Plaintiffs have offered evidence demonstrating that the City's regulation of AGDs has substantially chilled the speech of their clients, because "customers fear that they will receive further citations if they do." (Instrument No. 31, at 2). Further, Luycx, senior City official of the Sign Administration, had testified that since the City halted enforcement of Section 28–37 in December 2006, she has noticed an increase in the number of inflatable AGDs bearing commercial advertising. (Instrument No. 30–2, at 24). Finally, it is unclear what, if any, "easily identifiable and constitutionally proscribable conduct" the regulations at issue affect. On a Rule 56 motion for summary judgment, the Court must review the facts in the light most favorable to Plaintiffs and draws all reasonable inferences in favor Plaintiffs. *See Brown,* 207 F.3d at 781. Therefore, the Court accepts as true the claim that the City's regulation of AGDs with advertising has impacted a substantial amount of legitimate expression.

However, the overbreadth doctrine is not applicable to cases involving commercial speech, unless the challenged regulation potentially inhibits noncommercial as well as commercial speech.[2] *Bd. of Trs. v. Fox,* 492 U.S. 469, 483, 109 S.Ct. 3028, 106 L.Ed.2d 388 (1989); *Metromedia v. City of San Diego,* 453 U.S. 490, 505, n. 11, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (*citing Bates v. State Bar of Arizona,* 433 U.S. 350, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977)); *K.H. Outdoor,* 458 F.3d at 1267 (plaintiff had third-party standing pursuant to the overbreadth doctrine to bring a claim against an ordinance that regulated commercial and non-commercial speech);

*Dimmitt v. City of Clearwater,* 985 F.2d 1565, 1571 (11th Cir.1993) ("The overbreadth doctrine does not apply where the *entire* scope of the statute restricts only commercial speech. Where the statute governs both commercial and noncommercial speech, however, a litigant with a commercial speech interest may nonetheless qualify by virtue of the overbreadth rule to assert the speech rights of third parties with noncommercial speech interests." (internal citations omitted)). Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Public Service Comm'n of New York,* 447 U.S. 557, 561, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980) (*citing Va. Pharm. Bd. v. Va. Citizens Consumer Council,* 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976)). It is speech that "does no more than propose a commercial transaction." *Pittsburgh Press Co. v. Pittsburgh Comm'n on Human Relations,* 413 U.S. 376, 385, 93 S.Ct. 2553, 37 L.Ed.2d 669 (1973).

Section 28–37 defines AGDs as devices that "attract attention to any commercial business, or any goods, products or services available on the premises of the commercial business . . ."; AGDs are inherently commercial by definition. (Instrument No. 26–2, at 5). During the pendency of the instant suit, the City promulgated a new policy interpretation of Section 28–37: AGDs bearing any and all "written messages," "graphical representations," or "commercial advertisement," whether generic or non-generic, are disallowed. (Instrument No. 26–2, 20–22). AGDs without any speech or advertisement printed on it, and alternate forms of outdoor advertising such as wall signs, window signs, and free-

**2.** Although the parties failed to discuss the limits of overbreadth standing for commercial speech, the Court must consider the issue *sua* *sponte* because standing is a jurisdictional threshold matter. *Bauer v. Texas,* 341 F.3d 352, 357 (5th Cir.2003).

standing signs, are allowed. (*Id.*). The Sign Code, Section 28–37 and the related regulatory scheme clearly address commercial speech; they do not touch on noncommercial speech.

 Overbreadth standing—standing to bring a claim on behalf of the legal rights and interests of third parties—is not permissible for commercial speech because commercial speech is not as easily deterred by overbroad regulation. *Cent. Hudson*, 447 U.S. at 566, n. 8, 100 S.Ct. 2343. Bolstered by the demands of the marketplace, commercial speech is "more hardy, less likely to be chilled, and not in need of surrogate litigators." *Bd. of Tr.*, 492 U.S. at 481, 109 S.Ct. 3028 (*citing Bates*, 433 U.S. 350, 97 S.Ct. 2691); *Va. Pharm. Bd.*, 425 U.S. at 771, n. 24, 96 S.Ct. 1817 ("Since advertising is the Sine qua non of commercial profits, there is little likelihood of its being chilled by proper regulation and forgone entirely."). The assumed profit motive is thought to be sufficiently compelling to enable such speech to withstand the chilling effect of an overbroad statute. *Va. Pharm. Bd.*, 425 U.S. at 771, n. 24, 96 S.Ct. 1817.

 Here, Plaintiffs' *customers'* commercial speech has been purportedly chilled by the City's regulations disallowing advertising on AGDs. It follows that Plaintiffs' customers would have standing, in their own right, to bring a First Amendment challenge to Section 28–37 and the City's regulatory scheme concerning AGDs. Indeed, if the City's regulation of AGDs substantially infringes the free commercial speech of Plaintiffs' clients, then economic incentives should encourage Plaintiffs' customers to bring a claim in their own right. They are welcome to bring this claim and do not need Houston Balloons to act as their surrogate.

For the above reasons, Plaintiffs lack standing to bring a First Amendment constitutional challenge in the instant case on the current regulations.

However, pursuant to Ordinance No. 2008–992, the City has amended the regulation of AGDs in a way that would give Plaintiffs standing in their own right to challenge the new regulations, which will take effect on January 10, 2010. Accordingly, the Court grants Plaintiffs leave to amend their pleading if they so desire and DENIES Defendant's Partial Motion for Summary Judgment on Plaintiffs' First Amendment claim without prejudice to reurging. Because an amendment of the pleadings may necessitate additional discovery, the parties are ordered to prepare a new proposed scheduling order.

If Plaintiffs choose not to amend to assert this new claim, Plaintiffs should provide notice to the Court within five days of the date of this Order and an amended Order dismissing Plaintiff's First Amendment claim will be issued and this case will proceed to trial on the remaining claims.

## VI.

Accordingly, the Court has examined the record in the light most favorable to the nonmoving party and **DENIES** the City's Motion for Partial Summary Judgment without prejudice to reurging.

Plaintiffs are **GRANTED** leave to amend pleadings. Parties are **HEREBY ORDERED** to prepare a new proposed scheduling order.

If Plaintiffs choose not to amend pleadings, Plaintiffs are **HEREBY ORDERED** to notify the Court within five days of the date of this Order.

The Clerk shall enter this Order and provide a copy to all parties.